BOUDIN, Circuit Judge.
 

 On June 15, 1997, Robert Nelson, the appellant in this court, petitioned for bankruptcy protection under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701
 
 et seq.
 
 The petition was filed jointly with his wife Donata Nelson. Among the assets of the estate is the Nelsons’ interest in their Portland, Maine residence, of which each is a 50-percent owner. The bankruptcy court has valued the residence — -around which this appeal centers — at $185,000. (In giving figures throughout, we disregard pennies and round out to the nearest dollar.)
 

 Section 522(b) of the Bankruptcy Code, 11 U.S.C. § 522(b), allows a debtor to exempt from his estate property exempt under state or local law.
 
 [1]
 
 Maine, in which the Nelsons are apparently domiciled, exempts the debtor’s interest in his residence but only up to the amount of $12,-500. 14 M.R.S.A. § 4422. Even this modest amount is not automatically secure because the exemption, standing alone, merely protects the assets from distribution to the general creditors; the exemption itself is not deemed to nullify liens that give secured creditors a security interest in property.
 
 Dewsnup v. Timm,
 
 502 U.S. 410, 418, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992);
 
 Owen v. Owen,
 
 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).
 

 However, in 1978, Congress separately provided that the debtor may “avoid” certain liens under certain circumstances where the lien would “impair an exemption,” Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 522(f), 92 Stat. 2549, 2589 (1978) (codified as amended at 11 U.S.C. § 522(f)); and it later adopted a definition of this impairment concept. Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 303, 108 Stat. 4106, 4132 (1994) (codified at 11 U.S.C. § 522(f)(2)(A)). Ordinary real property mortgages are not avoidable but among liens that may be avoided are most (although not all) “judicial liens,” such as those imposed to secure an ordinary civil judgment. 11 U.S.C. § 522(f)(1)(A).
 

 On August 11, 1997, Robert Nelson invoked this avoidance provision by requesting the bankruptcy court to avoid in their entirety two existing judicial liens held by Joseph Scala in the amount of $24,000 against Robert Nelson’s interest in the residence; this amount was owed to Scala by Robert Nelson alone and Donata Nelson’s interest in the property was not subject to the Scala liens. No challenge was made to four other mortgages upon, and a tax hen against, the property, totaling $134,626 and representing joint obligations of both Nelsons. Thus, apart from the Scala liens, the Nelsons’ net equity in the residence was only $50,374 ($185,000-$134,626).
 

 In due course, the bankruptcy court ruled that Robert Nelson was entitled to avoid the Scala liens only to the extent
 
 *34
 
 necessary to preserve $12,500 for Robert Nelson out of his half of the couple’s net equity; since his share of the couple’s net equity was $25,187 (50% of $50,374), the court ordered the Scala liens avoided in the amount of $11,313, leaving $12,687 encumbered for Scala and $12,500 for Robert Nelson. The district court affirmed,
 
 Nelson v. Scala,
 
 229 B.R. 262 (D.Me.(1998)), and Robert Nelson now seeks review in this court, urging that he is entitled to have the Scala liens set aside in their entirety.
 

 At first blush, Robert Nelson’s claim appears to be overreaching because the evident purpose of the avoidance provision was to permit him to keep free of judicial liens only his
 
 exempt
 
 property and Robert Nelson’s exemption as to his residence is only $12,500. While the Scala liens must be avoided in part to allow Nelson this amount (otherwise they would capture $24,000 of Robert Nelson’s $25,187 equity), avoiding the liens in full would appear either to give Robert Nelson a windfall or enrich the general creditors at the expense of Scala as a secured creditor. One would expect that the differential would go to the general creditors (see discussion below) although Robert Nelson may be litigating this case on the basis of a contrary assumption.
 

 Nevertheless, Robert Nelson’s claim to full avoidance of the Scala liens rests on statutory language, presenting a legal issue subject to
 
 de novo
 
 review in this court.
 
 Strickland v. Commissioner, Me. Dep’t of Human Servs.,
 
 96 F.3d 542, 545 (1st Cir.1996). This claim is based on the peculiar language that Congress adopted in defining the concept of “impairment” of an exemption for purposes of section 522(f). Section 522(f)(2)(A) provides:
 

 For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
 

 (i)the lien;
 

 (ii) all other liens on the property; and
 

 (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
 

 exceeds the value that the debtor’s interest in the property would have in the absence of any liens.
 

 11 U.S.C. § 522(f)(2)(A).
 

 Robert Nelson points out that under this formula “the lien” sought to be avoided is $24,000; “all other liens” on the property total $134,626; and “the amount of the exemption” absent any liens is $12,500. The “sum” of these three figures—$171,-126—exceeds “the debtor’s interest in the property in the absence of any liens”— here, $92,500 (50% of $185,000)—by almost $80,000. Thus, says Robert Nelson, the courts must treat the Scala liens as impairing the exemption “to the extent” of this differential, which (at almost $80,000) greatly exceeds the Scala liens ($24,000) in their entirety. If the statute were taken literally, this would render the Scala liens liable to avoidance in full.
 

 Such a result would need some explaining. Exemptions serve the “fresh start” aim of the bankruptcy statute, as well as other social ends, by preserving certain assets — like an interest in the bankrupt residence or the debtor’s work tools — against most claims by general creditors. But, as already noted, under the Code exemptions do not themselves defeat security interests in property. An expressed purpose of Congress in enacting section 522(f)’s avoidance provision was to prevent unsecured creditors from bypassing exemptions simply by converting their claims into judicial liens and obtaining security interests in otherwise exempt property. H.R.Rep. No. 95-595, 126-27 (1977),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6087-88.
 

 This aim — to protect the debtor’s exemption — is fully achieved by allowing Robert Nelson to avoid the Scala liens in part, as ordered by the district court, since
 
 *35
 
 this would free up for Nelson his full $12,-500 exempt interest.
 
 [2]
 
 Yet, mechanically applied, the formula in section 522(f)(2)(A) perversely seems to call for avoidance of the Scala liens in full and to Scala’s disadvantage. Courts are not required to follow literal language where it would produce an outcome at odds with the purpose of Congress and where the result stems merely from an unintended quirk in drafting.
 
 E.g., Sagansky v. United States,
 
 358 F.2d 195, 201 (1st Cir.),
 
 cert. denied,
 
 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966).
 

 The legislative history of the amendment that added the (2)(A) formula to subsection (f) is instructive. The House report makes clear that Congress was dissatisfied with the results reached by pre-amendment decisions in four cases interpreting section 522(f) and was adopting the new formula to alter the results. H.R.Rep. No. 103-835, 52-54 (1994),
 
 reprinted in
 
 1994 U.S.C.C.A.N. 3340, 3361-63. For each scenario, the report cites the case and explains why Congress proposed to change the outcome for future cases.
 
 Id.
 
 But in each of the scenarios, the court’s result (to be overruled by the amendment) in some fashion impaired an exemption or an exempt interest in property to the disadvantage of the debtor; and in none did the scenario resemble that presented by Robert Nelson’s case.
 

 As already shown, the partial avoidance of the Scala hens ordered by the district court leaves exactly $12,500 for Robert Nelson as exempt property not subject to any lien.
 
 See
 
 note 3, above. Further, were the Scala hens to be avoided in full, the Maine exemption would still entitle Robert Nelson to keep only $12,500; the balance of his remaining equity (after the mortgages and tax hen) seemingly would go to satisfy general creditors, including among others the now unsecured Scala claim. It serves no known purpose of the 1994 amendment merely to rearrange priorities among creditors.
 

 Where Congressional language diverges from apparent purpose, no simple answer tells the court which path to follow in interpreting the statute. More than one variable bears on the choice — explicitness of language, clarity of purpose, explanation for the discrepancy between them, the unfairness or anomaly worked by the hteral apphcation — and each is a matter of degree. But along with much else, judging involves making such judgments, always difficult where Congress did not focus upon the precise problem before the court. Here, a hteral reading of the formula produces a measure of hen avoidance that goes beyond the protection that Congress sought to provide for the debtor and simply distorts priorities as between creditors.
 

 There is no circuit precedent directly in point.
 
 [3]
 
 Scala says that we rejected a “formalistic”
 
 (i. e.,
 
 hteral) reading of the formula in
 
 In re Silveira,
 
 141 F.3d 34, 36-38 (1st Cir.1998). But while
 
 Silveira
 
 stressed the same practical concerns that we do, the opinion was also able to square its result with the formula’s language.
 
 See In re Silveira.
 
 That is harder to do in this case where (unlike Silveira) a hteral apphcation of the formula produces an outcome at odds with statutory purpose. This contrast is apparent if one troubles to insert into the statutory formula the figures from each case.
 

 The reason why the statutory formula does not quite “work” in our case has to do
 
 *36
 
 with the asymmetry of obligations as between Robert Nelson and his wife (remember that both are obligated on five of the debts but only Robert is liable on the statutory liens). As the bankruptcy and district courts proved in their respective opinions, it is possible to adjust for this asymmetry — each judge used a different adjustment — to produce the partial avoidance result that we affirm. But it is not clear that either adjustment will work in every variant case; and neither really avoids the charge that the court is departing from a literal reading of the formula.
 

 However, the result reached by the bankruptcy and district courts achieves Congress’s aim to protect in full (but only in full) Robert Nelson’s exempt interest in his residence. To go beyond this would work an injustice to Scala, provide a windfall to other creditors, and (so far as we can tell) fail to benefit Robert Nelson at all, let alone benefit him in any way intended by Congress. In these circumstances, we think that the departure from literal language — always a step to be taken with hesitation — is nevertheless well justified.
 

 Affirmed.
 

 [1]
 

 . Alternatively, in some states the debtor may choose instead to use a set of exemptions specified in the Code itself, 11 U.S.C. 522(d), but Maine has opted out of this alternative exemption scheme.
 
 See
 
 11 U.S.C. § 522(b)(1); 14 M.R.S.A. § 4426. With an exception not here relevant, section 522 is applied separately to each debtor even in a joint case. 11 U.S.C. § 522(m).
 

 [2]
 

 . On sale of the property, the mortgages and tax lien would absorb $134,626; and of the $50,374 remaining for the Nelsons, Robert Nelson’s half ($25,187) would be divided between him up to the amount of his exemption ($12,500) and Scala to satisfy the liens to the extent not avoided ($12,687).
 

 [3]
 

 . There are a few bankruptcy court decisions but they are divided. Two decisions conclude that the literal reading of the statute should be followed,
 
 see In re Cozad,
 
 208 B.R. 495 (10th Cir. BAP 1997);
 
 In re Pascucci,
 
 225 B.R. 25 (Bankr.D.Mass.1998), and one decision — in addition to the bankruptcy decision in our case — departs from the literal language of the formula because it would produce an “absurd result,”
 
 see In re Lehman,
 
 223 B.R. 32 (Bankr.N.D.Ga.1998).