### In re Barry Carroll FREEMAN, Mamie Lee Styles Freeman, Debtors.

### Civ.A. No. 00–07739–W.

United States Bankruptcy Court, D. South Carolina.

Jan. 10, 2001.

---

Robert H. Cooper, Greenville, SC, for debtors.

Samuel C. Waters, Columbia, SC, Andrew J. White, Jr., Greenville, SC, for creditors.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion to Avoid the Judicial Lien of the Greenville Hospital System ("Hospital") (the "Motion") pursuant to 11 U.S.C. § 522(f)(1)(A)[1] on the ground that it impairs the homestead exemption of Mamie Lee Styles Freeman ("Mrs. Freeman" or "Debtor") in her interest in the residence she owns with her husband, Barry Carroll Freeman. Mrs. Freeman and Barry Carroll Freeman (collectively "Debtors") further seek confirmation of the Chapter 13 Plan that was filed on September 13, 2000, which proposes to avoid Hospital's judicial lien and to treat Hospital's claim as a general unsecured claim. On September 25, 2000, Hospital filed an Objection to Mrs. Freeman's Motion to Avoid Judicial Lien in which it asserted that its judgment lien could not be avoided and rather should be treated as a fully secured claim. After considering the pleadings in the matter and the arguments of counsel at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R.Civ.P. 52, made applicable in bankruptcy proceedings by Fed. R. Bankr.P. 7052.[2]

---

1. Further references to the Bankruptcy Code shall be by section number only.

2. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such; and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

## FINDINGS OF FACT

1. On the date of the petition, Debtors owned a lot and a house thereon located at 191 Walker Road, Travelers Rest, South Carolina. Debtors used the property as their residence, and each owned a one-half interest in it.

2. The fair market of the property, as reflected in Debtors' Scheduled, is $105,000.[3]

3. On November 27, 1995, the Court of Common Pleas of Greenville County entered judgment against Mrs. Freeman only for $28,106.00, with $85.00 costs, in connection with a lawsuit filed by Hospital to collect unpaid medical expenses. The parties in this action have agreed that, as of the petition date, the balance of the judgment, with accrued judgment interest, was $46,927.53, plus $85.00 costs. The daily interest accrual on the judgment is $10.78.

4. Subsequent to the recordation of Hospital's judgment lien, on February 10, 1998, Debtors became indebted to James Hamby and JB Hart and granted those creditors a mortgage on their residence (the "Hart/Hamby Mortgage"). The Hart/Hamby Mortgage was recorded in Greenville County on February 17, 1998.

5. On August 11, 1998, Debtors became indebted to EquiCredit Corporation of South Carolina, and in that transaction granted the creditor a mortgage on their residence. Afterwards, Litton Loan Servicing LLP became the holder of that mortgage (the "Litton Mortgage"). The Litton Mortgage was recorded in Greenville County on August 17, 1998; however, the holders of the Hart/Hamby Mortgage subordinated their lien rights to the Litton Mortgage; therefore, the Litton Mortgage acquired a first mortgage lien on the property, subject only to the Hospital Lien which was recorded several years earlier.[4]

6. In the Chapter 13 Plan and Related Motions filed on September 13, 2000, Debtor seeks to avoid Hospital's judicial lien pursuant to § 522(f)(1)(A); however, Hospital filed a timely objection to the avoidance motion and to Debtor's proposed treatment of its claim under the Chapter 13 Plan. Hospital further asserted that its judgment lien should be treated as a fully secured claim.

## CONCLUSIONS OF LAW

Debtor seeks to avoid Hospital's judicial lien pursuant to § 522(f)(1)(A). Section 522(f)(1)(A) provides in pertinent part that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien." The main purpose of the subsection was to create equity in the debtor's property encumbered by liens recorded prior to the filing of the bankruptcy petition, so that the equity which was created would then become part of the bankruptcy estate and could be exempted by the debtor. *See, e.g. In re VanZant,* 210 B.R. 1011, 1013 (Bankr.S.D.Ill.1997) (citing

---

3. In its Objection to Debtor's Motion to Avoid Judicial Lien, Hospital states that the residence has a value of $105,800. In reaching such conclusion, Hospital added the value of the residence in question as stated in Schedule A ($105,000.00) to the value of two burial plots located in Greer, South Carolina ($800.00). The Court finds that the $800.00 value of the burial plots has no bearing on the matter; however, even if such value were to be taken into consideration in calculating the extent that Hospital's judicial lien impairs Debtor's exempt property, it would not impact the Court's decision.

4. The priority of Hospital's judgment lien was recognized by the Court of Common Pleas of Greenville County in the Judgment of Foreclosure and Sale entered on or about August 10, 2000, pursuant to the first mortgagee's attempt to foreclose on the property. In that Order, the court noted that "[Hospital's] judgment lien is superior to [EquiCredit Corporation's] Mortgage, and sale shall be made subject to that lien."

*Owen v. Owen,* 500 U.S. 305, 308–09, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)). In other words, "[s]ection 522(f)(1)(A) ... protects the debtor's exemption rights from being diminished or even eliminated by liens that attached to the debtor's property by means of judicial process prepetition." *Id.*

■ The first element that needs to be considered in making a determination of whether a creditor's lien is avoidable pursuant to § 522(f)(1)(A) is whether the lien is a "judicial lien" as required by the section. In this case, the parties do not dispute the fact that Hospital's lien is a "judicial lien" and further agree that Hospital's lien is a first priority encumbrance on debtors' residence; therefore, the Court only needs to determine whether the lien in question impairs an exemption that Mrs. Freeman would otherwise be entitled under § 522(b) and S.C.Code Ann. § 15–41–30.[5]

Debtor requests that the Bankruptcy Court avoid Hospital's lien in its entirety because, pursuant to a strict interpretation of the mathematical formula provided in § 522(f)(2), the judicial lien impairs the exemption. Debtor argues that to determine whether a judicial lien impairs an exemption of a debtor, a court must add the amount of the judicial lien to be avoided, plus the amounts of all other unavoidable liens, plus the amount of the exemption that is allegedly impaired. If the sum of those figures exceeds the amount of the interest that the debtor would have in the property in question, then the judicial lien in question impairs the exemption and the

lien is avoidable. Mrs. Freeman applies the following figures to the calculation to reach the conclusion that Hospital's lien impaired her exemption:

| | |
|---|---|
| Hospital Lien (First in priority) | $ 46,927.53 |
| Litton Mortgage (Second in Priority) | $103,500.00 |
| Hart/Hamby Mortgage (Third in Priority) | $ 7,000.00 |
| Mrs. Freeman's Exemption [6] | $ 5,000.00 |
| TOTAL | $162,427.53. |
| Fair Market Value of Residence | $105,000.00 [7] |
| Amount by which Total Exceeds Fair Market Value | $ 57,427.53 |

■ On the other hand, Hospital argues that in order for Hospital's judicial lien to impair Mrs. Freeman's homestead exemption under § 522(f)(1)(A), and thus be avoidable, Mrs. Freeman must have equity in the residence without taking into account the judicial lien. Hospital emphasizes that because the encumbrances on the property without Hospital's lien total $110,500.00, thus exceeding the fair market value of the property by approximately $5,000.00, § 522(f)(1)(A) does not apply to the facts at hand because there is no exemption which can be impaired. In determining whether Hospital's lien impairs Mrs. Freeman's exemption, and if so to what extent, the Court will first engage in an overview of § 522(f) and Congress' intentions in enacting the statute.

### A. Overview of § 522(f)

Since its inception, § 522(f)(1)(A), which sets forth the provision allowing a debtor to avoid a judicial lien where it "impairs" the debtor's exempt property, has created much confusion in the courts. Prior to the Bankruptcy Reform Act of 1994, the courts were divided as to when judicial liens impaired an exemption. *In re VanZant,* 210 B.R. 1011, 1013 (Bankr.S.D.Ill.1997)

---

**5.** That section of the South Carolina Code provides:

> The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by any court or bankruptcy proceeding:
>
> (1) The debtor's aggregate interest, not to exceed five thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence ...

S.C.Code Ann. § 15–41–30 (Law.Co-op.1976).

**6.** Both Debtors and Hospital acknowledged that the exemption to be considered would be $5,000.

**7.** As the Order discusses below, there is a split of decisions as to whether § 522(f)(1)(A)'s language that "the debtor may avoid the fixing of a lien *on an interest of the debtor in property"* allows only the debtor's half interest in a jointly owned residence, in this case $52,500, to be taken into account.

("Courts were divided concerning 'the extent to which' a judicial lien could be avoided under this section, that is, whether a debtor with insufficient equity in property to provide the debtors' full homestead exemption could avoid the judicial lien in its entirety or whether the lien would be avoided only in the amount of the debtor's exemption.").

Through the Bankruptcy Reform Act of 1994, Congress sought to add a subsection to clarify the intent of § 522(f)(1) and provide a mathematical formula to determine whether a lien impaired a debtors' exemption. Congress was concerned with the courts' confusion in applying § 522(f)(1) and noted:

> Because the Bankruptcy Code does not currently define the meaning of the word "impair an exemption" in section 522(f), several court decisions have, in recent years, reached results that were not intended by Congress when it drafted the Code. This amendment would provide a simple arithmetic test to determine whether a lien impairs an exemption, based upon a decision, *In re Brantz*, 106 B.R. 62 (Bankr.E.D.Pa. 1989), that was favorably cited by the Supreme Court in *Owen v. Owen*, 111 S.Ct. 1833, 1838, n. 5.

H.R. Rep. No. 835, 103rd Cong., 2d Sess. 52–54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3361–63. To ameliorate the situation, § 522(f)(2) was added to provide, in part, as follows:

(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

> (i) the lien;

> (ii) all other liens on the property; and

> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtors' interest in the property would have in the absence of any liens.

In its commentary to the Bankruptcy Reform Act, Congress made clear that there were some court decisions that would be overruled by the enactment of the Act and further clarified Congress' intent in four specific scenarios. Among the four scenarios discussed by Congress was the case involving a factual situation similar to the one presently before the Court. In fact, Congress stated:

> The amendment also overruled *In re Simonson*, 758 F.2d 103 (3d Cir.1985), in which the Third Circuit Court of Appeals held that a judicial lien could not be avoided in a case in which it was senior to a nonavoidable mortgage and the mortgages on the property exceeded the value of the property. The position of the dissent in that case is adopted.

H.R.Rep. No. 835, 103rd Cong., 2d Sess. 52–54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3361–63.[8] In *In re*

---

**8.** The other scenarios which were discussed in the commentary are as follows:

> The first is where the debtor has no equity in a property over and above a lien senior to the judicial lien the debtor is attempting to avoid, as in the case, of a debtor with a home worth $40,000 and a $40,000 mortgage. Most courts and commentators had understood that in that situation the debtor is entitled to exempt his or her residual interests, such as a possessory interest in the property, and avoid a judicial lien or other lien of a type subject to avoidance, in any amount, that attaches to that interest. Otherwise, the creditor would retain the lien after bankruptcy and could threaten to deprive the debtor of the exemption Con-

gress meant to protect, by executing on the lien.... The formula in the section would make clear that the liens are avoidable.

> The second situation is where the judicial lien the debtor seeks to avoid is partially secured. Again, in an example where the debtor has a $10,000 homestead exemption, a $50,000 house and a $40,000 first mortgage, most commentators and courts would have said that a judicial lien of $20,000 could be avoided in its entirety.... However, a few courts, including the Ninth Circuit in *In re Chabot*, 992 F.2d 891 (9th Cir.1992), held that the debtor could only avoid $10,000 of the judicial lien in this situation, leaving interest in property. This in turn will result, at a minimum, in any

*Simonson,* 758 F.2d 103 (3d Cir.1985), the court was faced with a motion to avoid judicial liens pursuant to § 522(f). The value of the debtor's residence was approximately $58,250 and was encumbered, in the proper order of priority, by the following liens: a first mortgage in the amount of $25,145.95, judgment liens totaling $14,411.13, and a second mortgage in the amount of $41,313.84. The joint debtors claimed an exemption of $15,000 in their residence. The court noted that the first and second mortgage totaled $66,460.79, which exceeded the value of the residence. In concluding that the debtor had no interest in the property to which an exemption could attach, the majority of the court stated:

> Had the property produced at sale proceeds in excess of the consensual liens, which are not subject to avoidance under section 522(f)(1) or (2), the debtor would have had an exemptible interest in the excess, behind the liens of the first and second mortgages, and would have been entitled to avoid the judgment liens so as to preserve that interest for application of the exemption ... *Absent such equity, the problem of lien avoidance*

*under section 522(f) simply does not arise.*

*Id.* at 105–06. Other courts also supported *In re Simonson's* view that the existence of equity was a prerequisite for the avoidance of a lien under § 522(f)(1). *See, e.g. Avery v. Fraser Firs for Christmas (In re Avery),* 191 B.R. 649 (W.D.N.C.1995), *aff'd* 98 F.3d 1334 (4th Cir.1996) ("Fourth Circuit law on this issue is clear: if there is no equity in the homestead, there is no exemption to be impaired."); [9] *Fitzgerald v. Davis (In re Fitzgerald),* 729 F.2d 306, 308 (4th Cir.1984) ("The fair market value of the property is an important factor in determining how to treat a judgment lien under § 522(f), because the extent to which the lien impairs a valid exemption depends on the amount of the debtor's equity in his property.").

However, the view that lack of equity in the property precluded avoidance of a judicial lien has been clearly overturned by the Bankruptcy Reform Act of 1994, in which Congress clearly stated that it intended to overrule that prerequisite and adopted instead the dissenting opinion in *In re Simonson* in which Judge Becker noted: "To

equity created by mortgage payments from the debtor's postpetition income—income which the fresh start is supposed to protect—going to the benefit of the lienholder. It may also prevent the debtor from selling his or her home after bankruptcy without paying the lienholder, even if that payment must come from the debtor's $10,000 exempt interest. The formula in the section would not permit this result.

The third situation is in the Sixth Circuit, where the Court of Appeals, in *In re Dixon,* 885 F.2d 327 (6th Cir.1989), has ruled that the Ohio homestead exemption only applies in execution sale situations. Thus, the court ruled that the debtor's exemption was never impaired in a bankruptcy and could never be avoided, totally eliminating the right to avoid liens. This leaves the debtor in the situation where, if he or she wishes to sell the house after bankruptcy, that can be done only by paying the lienholder out of equity that should have been protected as exempt property. By focusing on the dollar amount of the exemption and defining "impaired," the amendment should correct this problem. By defining "impairment," the

amendment also clarifies that a judicial lien on a property can impair an exemption even if the lien cannot be enforced through an execution sale.

H.R.Rep. No. 835, 103rd Cong., 2d Sess. 52–54 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3361–63.

9. Despite the fact that the decisions in *In re Avery* were dated post-Bankruptcy Reform Act, the amendments to the Bankruptcy Code that were enacted after 1994 only applied to cases filed after the effective date of the Reform Act. The court in *In re Avery* emphasized that although the debtors could have avoided the judicial lien even absent equity in their homestead under the 1994 amendments to § 522(f)(1), because their case as filed in October of 1993, the pre-Reform Act statute applied. *In re Avery,* 191 B.R. at 651 ("In October 1994, an amendment to § 522(f) became effective which supports the Appellants' interpretation of the statutory scheme. Nonetheless, the amendment does not apply to cases filed prior to the effective date of the amendment.").

the extent that the majority, in making this statement, equates a debtors' 'interest in property' with the debtors' 'equity,' in the property, i.e., the excess of value over unavoidable liens, I must disagree." *In re Simonson,* 758 F.2d at 108. In concluding that the judicial liens in the amount of $14,411.33 should have been avoided in its entirety, the dissenting opinion noted:

> [A] judicial lien "impairs" an exemption with respect to overencumbered property to the extent that the judicial lien, according to its amount and priority position, attaches to a portion of the value of the property. For example, in this case judicial liens of $14,411.33 are junior only to a valid mortgage of $25,145.95 on a property worth $58,250. Because $39,567.28 ($14,411.33 + $25,145.95) is less than $58,250, the full amount of the judicial liens attaches to value in the property, impairs the exemption, and is therefore avoidable under section 522(f).

*Id.* at 107; [10] *see, e.g. In re Whitehead,* 226 B.R. 539, 541 (Bankr.W.D.N.Y.1998) ("The Legislative History to the Bankruptcy Reform Act of 1994 has made it clear that it was always the intention of Congress in enacting Section 522(f)(1), that a debtor would be entitled to avoid the fixing of judicial liens, and take advantage of the applicable federal or state homestead exemption, even if a debtor did not have equity in their residence over otherwise unavoidable liens."); *In re VanZant,* 210 B.R. 1011, 1016 (Bankr.S.D.Ill.1997) (citing

5 *Collier on Bankruptcy,* ¶ 541.01, at 541–22) ("Under the Bankruptcy Code, a debtor has an 'interest in property' even if the property is fully encumbered by liens and the debtor has only an equitable or possessory interest."); *In re Raines,* C/A No. 98–01463–W (Bankr.D.S.C.4/23/1998) (quoting *In re Higgins,* 201 B.R. 965 (9th Cir. BAP 1996)) (" 'The legislative report accompanying the 1994 Bankruptcy Reform act bolsters the literal application of Section 522, confirming that a lack of equity in property need not preclude avoidance of a lien on that property.' ").

Thus, it is clear that Hospital's argument that its judicial lien is unavoidable because Mrs. Freeman has no equity in the property in question is incorrect. "[F]or purposes of determining impairment, the formula creates equity, even if the debtor otherwise has no equity in the property." *In re Whitehead,* 226 B.R. 539, 541 (Bankr.W.D.N.Y.1998). Thus, the next issue the Court needs to explore is the application of § 522(f)(2) to the present facts.

## B. Application of Section 522(f)(1)(A)

■ The Bankruptcy Reform Act of 1994, which was supposed to, among other things, simplify the application of § 522(f)(1)(A), has failed to provide the clarity and predictability it had promised, and courts continue to produce split results in cases dealing with the avoidance of judicial liens.

---

10. One of the concerns in conjunction with the dissent's holding was that some debtors may overencumber their property with consensual liens after the judicial lien has attached and, pursuant to § 522(f)(1)(A), be able to avoid the senior judicial lien and retain an exemption in the property. However, the dissenting judge in *In re Simonson,* 758 F.2d 103 (3d Cir.1985), dismissed such concern and stated:

> I concede that these policy arguments are forceful. But in light of the overriding purpose of section 522(f) to protect the debtor's exemption against the threats posed by carefully specified types of security interests, see 11 U.S.C. § 522(f), I would not

read into the provision a limitation not fairly discernible from the plain language of the statute or its legislative history. The majority supplies no evidence of a congressional intent to restrict the scope of the section, and my reading of the legislative history suggests that Congress did not intend to prohibit the application of section 522(f) in a situation such as the present one. . . . An important goal of the exemptions is to "provide relief for the overburdened debtor." This policy is no less compelling merely because, as Congress well knew would often be the case, a straitened debtor has overencumbered his property.

*Id.* at 110 (citations omitted).

According to the language of § 522(f)(2), a lien is determined to impair an exemption if the sum of the lien in question, all other liens on the property, and the exemption the debtor is entitled to "exceeds the value that *the debtor's interest in the property* would have in absence of any liens." § 522(f)(2) (Emphasis added). Thus, the question becomes to what extent Mrs. Freeman has an interest in the residence and what values are applied to the mathematical formula. The issue of how a debtor's interest in property should be valued when the debtor co-owns the property has been a topic of much debate even following the Bankruptcy Reform Act of 1994, and two lines of cases have developed. One line of cases applies a strict construction of the statutory language of § 522(f)(2) and has concluded that:

> [T]he plain meaning of the statute requires that the lien to be avoided and all liens of the property be added to the exemption and deducted from the debtor's interest in the property absent any liens. The calculation thus involves the subtraction of the full amount of all liens and the exception from the debtor's interest which may be less than a full interest.

*In re Abruzzo*, 249 B.R. 78, 88 (Bankr. E.D.Pa.2000) (recognizing two lines of cases in the context of the lien avoidance provision of § 522(f) and, for purposes of calculating the mortgagee's secured claim in strip off actions, concluding that the court should subtract the full amount of the senior secured debt from debtor's 50% interest in the property); *see, e.g. In re Piersol*, 244 B.R. 309, 312–13 (Bankr. E.D.Pa.2000); *Zeigler Eng'g Sales, Inc. v. Cozad (In re Cozad)*, 208 B.R. 495, 498 (10th Cir. BAP 1997); *Federal Deposit Ins. Corp. v. Finn (In re Finn)*, 211 B.R. 780, 783 (1st Cir. BAP 1997); *In re Moe*, 199 B.R. 737, 739–40 (Bankr.D.Mont.1995); *In re Raines*, C/A No. 98–01463–W (Bankr.D.S.C.1998). Those cases have strictly interpreted § 522(f)(2) and have applied the formula set forth in that subsection literally, even if the outcome may cause a windfall to the debtor. As noted by the courts following this view, " '[i]t is not the court's function to legislate but rather to construe and apply the statute.' " *In re Raines*, C/A No. 98–01463–W (Bankr.D.S.C.1998) (quoting *In re Cozad*, 208 B.R. at 498.). For example, in *In re Cozad*, 208 B.R. at 498, the court was faced with debtor's motion to avoid a judicial lien in the amount of $76,972.75. The debtor in the case owned an undivided one-half interest in a homestead which was valued at $96,329.00. The property was encumbered with a mortgage in the amount of $42,223.47, on which he was jointly obligated with his wife. Furthermore, the homestead exemption claimed by the debtor in the property was in the amount of $11,000. The court emphasized that "[t]he plain meaning requires that the lien and all other liens on the property be added to the exemption that the debtor would be entitled to, if there were no liens on the property" and further stated that "[t]he Bankruptcy Court was correct in deducting the liens from one-half of the fair market value of the property as set forth in the statute." *Id.* at 498. In so holding, the court found that the sum of the mortgage encumbering the property, the IRS lien, the judgment lien in question, and the exemption claimed ($134,084.22) exceeded the debtor's interest in the property ($48,164.50) by $85,919.72; thus, it concluded that the judicial lien of $76,972.75 should be avoided in full.

In supporting such view, the court in *In re Piersol*, 244 B.R. 309 (Bankr.E.D.Pa. 2000) justified the same holding by noting, as other courts that reached similar conclusions also found, that " 'the plain language of the Bankruptcy Code ... is our determinant.' " *Id.* at 312 (quoting *Patterson v. Shumate*, 504 U.S. 753, 757, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992)). The court went on to explain its other reasons for holding such view: First, it explained that "[w]hen there is a significant doubt about the outcome of such a matter, ' "liberal interpretations of exemption laws are

favored." ' " *Id.* at 312–13 (quoting *In re Kaplan,* 162 B.R. 684, 698 (Bankr.E.D.Pa. 1993)). Furthermore, it explained that such view is in agreement with the notion that § 522(f) "must be interpreted 'to maximize the "fresh start" principle' of the Bankruptcy Code." *Id.*

Other courts, however, have disagreed with the view discussed above and have concluded that such a strict interpretation of § 522(f)(2) provides, in some situations, a windfall for the debtor which was not intended by Congress. "These courts conclude that § 522(f) is intended to protect in full, but only in full, a debtor's exemptions and that failing to calculate net equity before determining a debtor's interest confers more than the fresh start Congress intended." *See, e.g. Lehman v. Vision-Span, Inc. (In re Lehman),* 205 F.3d 1255 (11th Cir.2000); *Nelson v. Scala,* 192 F.3d 32, 35–36 (1st Cir.1999). Although these courts agree that the interpretation of a statute begins with its language, they rely on principles of statutory construction which allows courts to "look beyond the plain language of a statute if applying the plain language would produce an absurd result." *In re Lehman,* 205 F.3d at 1255–56.

In applying the formula set forth in § 522(f)(2), the courts supporting the second view have held that the debtor's net equity may be calculated before determining his or her interest. In *Nelson v. Scala,* 192 F.3d 32 (1st Cir.1999), for example, husband and wife filed bankruptcy, and each owned a one-half interest in their residence valued at $185,000. A judicial lien had been recorded against the husband in the amount of $24,000. The total of the other mortgages and tax liens which encumbered the property was $134,626. Furthermore, the husband claimed a homestead exemption in the amount of $12,500. The court affirmed the bankruptcy court and the district court's holdings and concluded that the lien was only partially avoidable. The court concluded that the debtor's share of the couple's net equi-

ty, after subtracting the mortgages and tax liens was $25,187 (50% of ($185,000—$134,626)); therefore, "[it] ordered the [judicial lien in question] avoided in the amount of $11,313, leaving $12,687 encumbered for [the judicial lien creditor] and $12,500 for [the debtor]." *Id.* at 34; *see also In re Lehman,* 205 F.3d at 1256–57.

This Court has previously addressed this issue in *In re Raines,* C/A No. 98–01463–W (Bankr.D.S.C.1998) and supported the first view. In that case, the debtor and her husband jointly owned a home which was valued at $160,000. The residence was encumbered by a first mortgage in the amount of $132,405 and a subsequent judicial lien against the debtor in the amount of $1,852. The debtor had claimed a homestead exemption in the amount of $5,000, as allowed by S.C.Code Ann. § 15–41–30(1). The Court applied a literal interpretation of § 522(f)(2) and found that:

> Since the judicial lien is in the amount of $1,852.00, all other unavoidable liens on the property total $132,405.00 and the amount of the exemption that the Debtor could claim if there were no liens on the property is $5,000.00, the lien of the Royal Treatment may be avoided in its entirety as the Debtor's interest in the property without these other encumbrances is $80,000.00 or one-half (½) of the $160,000.00 value of the property.

*Id.* (noting the calculation as follows: $1,852.00 + $132,405.00 + $5,000= $139,257.00; $139,257.00–$80,000= $59,257.00; thus avoiding the judicial lien in full).

Rather than undertaking a further analysis of the issue in light of the opinions decided after this Court's decision in *In re Raines* and revisiting the position the Court adopted in that case, this Court finds that, in applying the relevant figures in the present case, Hospital's judicial lien is fully avoidable under either approach. When applying the first view, the calculation would result in the following:

| | |
|---|---|
| Hospital Lien (First in priority) | $ 46,927.53 |
| Litton Mortgage (Second in Priority) | $103,500.00 |
| Hart/Hamby Mortgage (Third in Priority) | $ 7,000.00 |
| Mrs. Freeman's Exemption | $ 5,000.00 |
| TOTAL | $162,427.53. |
| Debtor's Interest in the Residence | $ 52,500.00 |
| Amount by Which Total Exceeds Debtor's interest | $109,927.53 |

Thus, under the first view, only Mrs. Freeman's one-half interest in the property ($105,000/2= $52,500) would be applied to the formula. Given the fact that the sum of Hospital's lien, plus the two mortgages on the property, plus Mrs. Freeman's homestead exemption exceeds Mrs. Freeman's interest in the property by $109,927.53, which is clearly more than the amount of the lien, the judicial lien is fully avoidable pursuant to § 522(f)(1)(A).[11]

The same result would also result if the formula adopted by the cases following the second view were to be applied to the facts at hand. In *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255 (11th Cir. 2000) and *Nelson v. Scala*, 192 F.3d 32 (1st Cir.1999), the courts first deducted the value of consensual, unavoidable liens from the full value of the property in question. They then took into consideration one half of the resulting equity, which represented the debtor's share of the equity in the property, and from that amount they deducted the debtor's exemption and concluded that any amount left was the extent to which the judicial lien in question was unavoidable. *See, e.g. In re Lehman*, 205 F.3d at 1255 (applying the following calculation: "The value of the entire property is $225,000.00. Deducting the mortgage,

$165,000.00, leaves $60,000.00 equity in the property, not accounting for VisionSpan's lien. The Debtor's half-interest in the property is therefore worth $30,000.00. After deducting the debtor's exemption, $5,312.00, there is remaining in the property $24,688.00. [VisionSpan's] lien is in the amount of $53,879.00, which clearly impairs the Debtors' exemption. [VisionSpan] is, however, entitled to retain its lien on the unencumbered, nonexempt portion of the Debtor's property, in the amount of $24,688.00.") In this case, however, there is no equity to consider once the amount of the two mortgages is deducted from the full value of the property ($105,000–$103,-500–$7,000= ($5,500)); therefore, the formula provided by the line of cases following the second view does not work in this case. The formula set forth in those cases was devised to prevent a windfall to the debtor.[12] However, in this case, no windfall would result to Mrs. Freeman because there is no value in the property over the two unavoidable mortgages.

## CONCLUSION

From the arguments discussed above, it is therefore

ORDERED that Hospital's judicial lien in the amount of $46,927.53 is avoided in full pursuant to § 522(f)(1)(A) and (f)(2).

**AND IT IS SO ORDERED.**

---

11. In applying the formula, Debtor took into consideration the full value of the property rather than her half interest in it. Despite the fact that none of the cases found by the Court has applied the approach employed by Debtor's in applying § 522(f)(2) to this case, the Court notes that Hospital's judicial lien would be avoided in full even if the entire fair market value was taken into account as Debtor has done in computing the calculation. In such case the total of Hospital's lien, the mortgages, and Mrs. Freeman's exemption ($162,427.53) would exceed the full value of the property by $57,427.53, which is still greater than the amount of Hospital's lien.

12. The court in *In re Lehman*, 223 B.R. 32 (Bankr.N.D.Ga.1998) emphasized the result from applying a strict interpretation of § 522(f)(2):

> To follow the language of the statute exactly would lead to an absurd windfall for the Debtor. The property is worth $225,000.00 and is encumbered by a first mortgage of $165,000.00. There are no other encumbrances except for the Creditor's lien. To avoid that lien in its entirety would leave equity in the property of $60,000.00. Because half that equity would belong to the debtor, he would effectively exempt his entire $30,000.00 interest in the real property. *Id.* at 34.