### In re Dean Allen KOLICH and Michelle Rene Kolich, Debtors.

### No. 01–41668.

United States Bankruptcy Court, W.D. Missouri.

June 27, 2001.

---

**35.** Fed.R.Bankr.P.2004(b).

**36.** *Nakash,* 190 B.R. at 770.

David E. Pettyjohn, Kansas City, MO, for debtors.

*MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Chief Judge.

Debtors Dean and Michelle Kolich filed a motion to avoid the lien of judgment creditor Antioch Laurel Veterinary Hospital (Antioch). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) over which the Court has jurisdiction pursuant to 28

U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## ISSUE PRESENTED

The Kolichs purchased a home in 1998, and the home is encumbered with a first mortgage in the amount of $219,018.60. The fair market value of the home is $275,000. On September 13, 2000, a judicial lien in the amount of $133,875 attached to the home. On December 5, 2000, the Kolichs borrowed $80,000 and encumbered the home with a second mortgage in that amount. In Missouri, debtors may claim a homestead exemption up to $8000. The Bankruptcy Code allows debtors to avoid judicial liens, but not consensual liens, that impair a homestead exemption. This case presents two questions. First, since the consensual liens exceed the value of the property, are the debtors entitled to claim any exemption at all? And second, if they are entitled to an exemption, what portion of the nonconsensual judicial lien is avoidable?

## DECISION

■ Debtors are entitled to claim an exemption in property regardless of whether there is equity in the property at the time the bankruptcy case is filed. But that exemption does not necessarily entitle them to avoid a judicial lien against the property in full. Instead, they may avoid the judicial lien to the extent of the homestead exemption, and to the extent the lien exceeds the value of the property, after taking account of the prior consensual lien.

## FACTUAL BACKGROUND

On October 2, 1992, Dean Kolich purchased a veterinarian practice from Antioch for $55,000.[1] Both Kolichs guaranteed payment of the purchase price.

On August 21, 1998, the Kolichs purchased, for the sum of $219,128.00, a residence located at 7816 Northeast 124th Street, Kansas City, Clay County, Missouri (the Residence). The World Savings Bank holds the First Deed of Trust on the Residence.[2] The balance due on the loan was $219,018.60 as of April 2, 2001.[3]

After declaring a default, Antioch filed suit against the Kolichs in the Circuit Court of Jackson County, Missouri. The Kolichs filed a counterclaim. On August 3, 2000, the Circuit Court of Jackson County, Missouri entered judgment in favor of Antioch and against the Kolichs in the sum of $118,250.00 together with $15,625.00 in attorney's fees.[4]

On September 13, 2000, Antioch caused to be filed with the Clay County Circuit Court an Authentication of Judgment that duly recorded the Jackson County judgment in Clay County,[5] thus giving Antioch a second lien position on the residence.

On December 5, 2000, the Kolichs executed a promissory note with Norbank in the amount of $80,000.[6] In exchange they granted Norbank a security interest in all of Antioch's equipment, inventory, accounts receivable, furniture and fixtures and general intangibles, as well as a sec-

1. Antioch Ex. # 13.

2. Debtor's Ex. # B(2).

3. Debtor's Ex. # F.

4. Antioch's Ex. # 2.

5. Debtor's Ex. # G.

6. Antioch Ex. # 9.

ond deed of trust on their Residence.[7] Norbank failed to discover the judgment lien at the time it recorded such deed of trust, thus, Norbank's lien on the Residence is in third position. Mrs. Kolich took the $80,000 loan proceeds to Las Vegas in a last ditch effort to gamble the couple out of debt. She failed.

In the spring of 2001 Antioch commenced proceedings to execute on the Residence in satisfaction of its judgment lien, and on April 13, 2001, the Kolichs filed this Chapter 7 bankruptcy petition. The Kolichs value the Residence at $275,000.00 on their bankruptcy schedules. Shortly after filing the petition, the Kolichs filed a motion to avoid Antioch's judgment lien, claiming the lien impairs their homestead exemption. Antioch objected, claiming that since the two deeds of trust would absorb the full value of the property anyway, its judicial lien does not impair the debtors' exemption. This Court scheduled a hearing on June 5, 2001.

## DISCUSSION

The Bankruptcy Code (the Code) permits debtors to avoid nonconsensual liens, if those liens prevent them from taking advantage of otherwise valid exemptions:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would

have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien.[8]

It is undisputed that the Kolichs are attempting to avoid Antioch's lien, that the lien attaches to their homestead, and that the lien is a judicial lien. It is also undisputed that debtors claim Missouri's homestead exemption, in the amount of $8,000.00.[9]

▮▮▮ Congress amended the Code in 1994 in an attempt to clarify the mathematical formula Courts are to use in determining if a judicial lien actually impairs an exemption: [10]

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.[11]

As the court explained in *In re Moe,* using this formula, a lien impairs a homestead exemption to the extent that the judicial lien, other avoidable liens and the exemption exceed the debtor's interest in the property.[12] The formula alone, however, has not clarified how best to determine what is a debtor's interest in the property, within the meaning of section 522(f)(1).[13]

---

7. Antioch Ex. # 5.

8. 11 U.S.C. § 522(f)(1)(A).

9. Mo.Stat.Ann. § 513.475.1 (Supp.2001).

10. *Simonson v. First Bank of Greater Pittston,* 758 F.2d 103 (3rd Cir.1985).

11. 11 U.S.C. § 522(f)(2)(A).

12. 199 B.R. 737, 739 (Bankr.D.Mont.1995).

13. *Compare In re Moe,* 199 B.R. 737, 739–40 (Bankr.D.Mont.1995) (holding that a debtor could avoid a judgment lien to the extent that the lien exceeded the sum of the debtor's interest in the property,. a tax lien, and the debtor's exemption) *with In re Freeman,* 259 B.R. 104, 113 (Bankr.D.S.C.2001) (where the court applied the formula and displaced a

So, I look to the legislative history of the 1994 amendments for guidance. In adding section 522(f)(2), Congress intended to overrule certain bankruptcy court decisions and to thereby provide for a more uniform interpretation of lien avoidance.[14] Congress first wanted to clarify that debtors could avoid judgment liens even if they had no equity in property over and above liens senior to the judgment liens. For example, if a debtor owned a home valued at $40,000.00 with a $40,000.00 mortgage, he could still exempt his residual interest.[15] Otherwise, the judicial lien creditor would retain the lien after bankruptcy and could use that lien to deny the debtor the exemption Congress intended to protect.[16] To that end, Congress attempted with the formula to allow a debtor to eliminate any portion of a judicial lien that could not be satisfied with the nonexempt equity that existed at the time of the bankruptcy filing.

■ Congress next wanted to emphasize that if a judicial lien is partially secured, the judicial lien creditor is entitled to retain its lien up to the value secured, but the debtor can avoid any remaining unsecured portion. The unsecured portion of the lien, therefore, does not survive the bankruptcy.[17] For example, if the value of the home is $50,000, the homestead exemption is $10,000, the first mortgage is $30,000 and the judicial lien is $20,000, under the amendment, the judicial lien creditor retains a lien for $10,000, and the debtor can avoid the $10,000 unsecured portion of the lien. In *Nelson v. Scala*, the debtor argued that the language of section 522(f)(2)(A) allowed the lien to be avoided in full if it could not be satisfied in full without impairing his homestead exemption.[18] The First Circuit rejected this argument stating that freeing nonexempt equity by avoiding the lien in full would result in a windfall to other creditors, and the purpose of the 1994 amendment was not to rearrange priority among creditors. That is essentially the situation in this case.

The Kolichs assert, however, that Norbank's consensual lien should displace Antioch's judicial lien. They contend that since the consensual liens absorb the value of the property, there is no equity for the judicial lien, therefore, it is avoidable under the section 523(f)(2)(A) formula. But the legislative history of the 1994 amendment contradicts the Kolichs' argument.[19] The House Report states that the amendment overrules a Third Circuit case that held a judicial lien sandwiched between two consensual liens could not be avoided if the consensual liens exceeded the value of the property.[20] Two of three judges on the Third Circuit panel held that debtors

first position judicial lien in the amount of $46,927.53 because two later consensual liens and debtor's homestead exemption in the amount of $5000 exceeded the debtor's interest in the property, which was $52,500).

14. H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, p. 3336; 140 Cong.Rec. H10769 (Oct. 4, 1994).

15. *In re Freeman*, 259 B.R. 104, 110 (Bankr. D.S.C.2001) (holding that the formula in section 522(f)(2)(A) creates equity for purposes of lien avoidance, even if debtors otherwise have no equity in the property)

16. *Id.*

17. *Id.*

18. *Id.*

19. H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (Oct. 4, 1994); 140 Cong.Rec. H10769 (Oct. 4, 1994).

20. *Simonson v. First Bank of Greater Pittston*, 758 F.2d 103 (3rd Cir.1985) (Becker, J. dissenting).

had no interest in a homestead to which an exemption could attach if consensual liens exceeded the value of the property, therefore, debtors could not avoid an intervening judicial lien.[21] The debtors owned a house valued at $58,250.00. The house was encumbered by a first mortgage in the amount of $25,145.95, two intervening judicial liens in the amount of $14,411.33, and a second mortgage in the amount of $41,314.84. Pennsylvania state law provided that debtors could exempt $15,000.00 as a homestead exemption. Debtors moved to avoid the two judicial liens pursuant to section 522(f)(1). The Third Circuit denied debtor's motion. The majority found that debtors had voluntarily encumbered any equity in their homestead with the second mortgage. As a result, they had no interest to which the exemption could attach that could then be impaired by the judicial liens.[22]

In a dissenting opinion, the Honorable Edward R. Becker disagreed. He stated that the relative priority of the liens was critical to a determination of the debtor's rights because a judicial lien's attachment must be established in relation to its amount and priority position.[23] Judge Becker reasoned that given their priority position, the judgment liens did attach to the exempt value in the property, and section 522(f)(1), by its terms, allowed debtors to avoid such liens to the extent they impaired debtors' exemption.[24] According to the legislative history, Congress adopted the dissent's position with the 1994 amendments.[25] Thus, even if a debtor voluntarily mortgages the home in excess of its value, the debtor retains some interest in the property. That interest can be claimed as exempt, and that exemption can be used as the basis for a lien avoidance action.

■ Taken together, the above three scenarios establish the three goals Congress hoped to accomplish with the 1994 amendments. First, Congress did not want judicial liens to impair debtors' fresh starts, therefore, debtors could avoid either a portion or all of a lien not satisfied with nonexempt equity, even if debtors had no exempt equity at the time of the bankruptcy petition. Second, debtors could not avoid judicial liens in full just because the nonexempt equity was insufficient to satisfy the lien in full. In other words, any equity remaining after prior consensual liens and exemptions must be used to partially satisfy the judicial lien. And third, a subsequent consensual lien did not displace the priority position of a judicial lien for purposes of section 522(f)(1). In this case, the Kolichs argue that under a mechanical application of the section 522(f)(2) formula, the judicial lien should be avoided in its entirety. They value the Residence at $275,000. The first mortgage is $219,018.60, the judgment lien is $133,875, and the second mortgage is $80,000, for total encumbrances of $440,893.60. That sum exceeds the value of the Residence by more than the amount of the judgment lien. That application of the formula, however, offers potential for abuse. A debtor, for instance, could nullify the priority of a properly obtained judicial lien by borrowing $80,000 from a bank, granting the bank a second mortgage on his home, and then using the loan proceeds on a gambling spree. Or, perhaps, a debtor, burdened by a judicial lien, could grant a family member a second mortgage on his

21. *Id.* at 106.

22. *Id.*

23. *Id.* at 107.

24. *Id.* at 111.

25. 140 Cong.Rec. H10769 (Oct. 4, 1994).

home prior to filing a bankruptcy petition, thus wiping out a prior judicial lien. Surely Congress never intended to adopt a formula that permits this kind of abuse.

Instead, by adopting section 522(f)(2) Congress intended to adopt the formula set out in *In re Brantz*.[26] In that case, the value of the property was $65,000. The property was encumbered by a first mortgage of $38,000, a subsequent judicial lien of $40,000, and debtors were entitled to an exemption of $15,800. The Court found that the debtors could not avoid the judgment lien to the extent of $12,200, the difference between the value and the exemption plus the prior liens. The debtors could, however, avoid all of the judgment lien in excess of $12,200, so that any future appreciation in value would go to the debtor, not the judgment lien holder.[27]

Significantly, in *Brantz* there was no mortgage junior to the judgment lien, but the *Simonson* case, like this one, dealt with judgment liens sandwiched between a first and second mortgage. The dissenting opinion in *Simonson*, which Congress intended to follow in adopting section 522(f)(2), applies the *Brantz* formula by adding together the judicial liens in question, the homestead exemption, and prior liens. To the extent that total is less than the value of the property, the lien does not impair the exemption. To the extent the

total exceeds the value, the lien does impair the exemption, and is avoidable. As Judge Becker states:

> In my view, under the structure of the bankruptcy code, the relative priority positions of the four encumbrances are critical. I believe that a judicial lien "impairs" an exemption with respect to overencumbered property to the extent that the judicial lien, according to its amount and priority position, attaches to a portion of the value of the property.[28]

■ While the formula, as stated in section 522(f)(2)(A), does not consider the priority position of the liens, the dissent in *Simonson* is predicated on the priority position of the judicial liens.[29] It is a maxim of statutory construction that statutes should be construed in a manner that does not lead to an absurd result.[30] Since there is no other Code section that allows a Court to ignore the relative priority prepetition position of liens, I find it would be an absurd result to construe section 522(f)(2)(A) to allow a debtor to erase an otherwise unavoidable judicial lien by taking out a junior mortgage.

Thus, applying the language of section 522(f)(2)(A) in a manner that comports with the intent of Congress, as asserted in the legislative history, to the facts of this case renders the following result. The fair

**26.** 106 B.R. 62 (Bankr.E.D.Pa.1989); H.R.Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (Oct. 4, 1994); 140 Cong.Rec. H10769 (Oct. 4, 1994).

**27.** *Id.* at 68.

**28.** *Simonson v. First Bank of Greater Pittston*, 758 F.2d 103, 107 (3rd Cir.1985) (Becker, J. dissenting). In enacting section 522(f)(2), Congress did not specifically reference cases, such as this one, in which a lien junior to the judgment lien is wholly unsecured. But in bankruptcy parlance, a lien which is secured by no value at all is considered to be an unsecured claim, and not a lien at all. Thus,

in applying the section 522(f)(2) formula, the Court should only consider those liens which are secured by value. Such a reading is consistent with the language of both sections 522(f)(2) and 506(a), as well as with Judge Becker's intent to leave the priority of the liens undisturbed.

**29.** *Simonson v. First Bank of Greater Pittston*, 758 F.2d 103, 107 (3rd Cir.1985).

**30.** *In re Freeman*, 259 B.R. 104, 112 (Bankr. D.S.C.2001) (citing *Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255, 1255–56 (11th Cir.2000)).

market value of the Residence is $275,000.00. World Bank holds the First Deed of Trust with a balance of $219,018.60. The judgment lien is in the amount of $133,875.00, and Norbank holds a Second Deed of Trust in the amount of $80,000.00. The debtor's interest in the Residence, after deducting the first mortgage, is $55,981.40. Antioch's lien is prior in time to Norbank's Second Deed of Trust. Retaining the priority position of each party's interest, Antioch's lien impairs the Kolichs' opportunity to apply their homestead exemption in the amount of $8,000.00. Thus, after deducting the homestead exemption of $8,000.00, the sum of $47,981.40 remains. This nonexempt interest can be attributed to Antioch's lien and is not avoidable. The remaining balance of the lien, $85,893.60, is avoidable.[31] In other words, whatever remains of a judicial lien is avoided after all non-exempt equity is attributed to the lien. This is the application most consistent with the plain language of the Code and Congress' intent. I, therefore, will sustain the Kolichs' motion to avoid Antioch's lien in the amount of $85,893.60. I will deny the motion as to the nonexempt value remaining after deduction of the first mortgage and debtor's homestead exemption. Antioch will continue to hold a lien in the amount of $47,981.40, which is not avoidable.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**31.** *See Nelson v. Scala,* 192 F.3d 32, 35 (1st Cir.1999).