In re Stephen Louis MEYER, Debtor.

All Points Capital Corp., Appellant,

v.

Stephen Louis Meyer, Appellee.

BAP No. CC–06–1135–KMoB.
Bankruptcy No. SA 05–16733–JB.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Nov. 15, 2006.

Filed July 31, 2007.

Scott E. Schutzman, Lee W. Chin, Law Offices of Scott E. Schutzman, Santa Ana, CA, for All Point Capital Corp.

R. Gibson Pagter, Pagter and Miller, Santa Ana, CA, for Stephen Louis Meyer.

Before: KLEIN, MONTALI, and BRANDT, Bankruptcy Judges.

**OPINION**

KLEIN, Bankruptcy Judge.

The bankruptcy court avoided two judgment liens under 11 U.S.C. § 522(f) as impairing the debtor's exemption in co-owned real estate. Appellant wants the court's order avoiding the senior $275,000 lien to remain intact on a default theory but wants it reversed as to its own junior lien on the theory the court ignored $91,497.50 of nonexempt equity to which judgment liens can remain attached after bankruptcy.

We agree there is nonexempt equity to which judgment liens may remain attached. Construing § 522(f)(2), which has not been amended since 1994,[1] to avoid an absurd result in the case of co-owned property, we hold that consensual liens against the entire fee must be netted out before computing the value of a debtor's fractional interest for purposes of avoiding judgment liens on which the co-owner is not liable.

Appellant's theory for exploiting default to squeeze out the senior lien offends the rule that multiple liens impairing exemptions be avoided in order of reverse priority and offends the rule that default judgments should not be entered when they are not warranted on the merits.

As the record is confused by procedural issues and lack of findings, we VACATE and REMAND.

**FACTS**

The chapter 7 debtor claimed a $50,000 homestead exemption in a co-owned residence he valued at $515,000, encumbered by consensual debt of $232,005, in which he scheduled his 50–percent joint tenancy interest as worth $257,500.

---

1. Section 522(f)(2) was not amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23.

If the property had been liquidated without transaction costs on the day of bankruptcy, the debtor's share as co-owner would have been $141,497.50, or $91,497.50 net of his $50,000 homestead exemption.[2]

The debtor's interest was subject to two judgment liens (as one of four co-debtors). In first position was $275,000 owed to American Capital Resources, Inc. ("American Capital") on a $217,972 judgment; next was $900,000 owed to appellant All Points Capital Corporation ("All Points") on an $805,631 judgment.

The debtor filed one motion to avoid both judicial liens under § 522(f)(1). The parties agree that if one considers only the debtor's net equity interest ($141,497.50) and deducts his $50,000 exemption, a judicial lien could withstand § 522(f)(1) avoidance to the extent of $91,497.50.

The obstacle to this result is the language of § 522(f)(2), which prescribes a statutory formula for calculating impairment that does not take fractional interests into account. The sum of "the lien" plus "all other liens on the property" plus the "amount of the exemption that the debtor could claim if there were no liens on the property" is compared with the "value that the debtor's interest in the property would have in the absence of any liens." 11 U.S.C. § 522(f)(2).

The debtor argued that § 522(f)(2) analysis should be done lien by lien in reverse order, beginning with All Points' junior lien. Comparing that lien with the sum of senior liens and the exemption, $557,005 (= $232,005 mortgage + $50,000 exemption + $275,000 American Capital judicial lien), the $515,000 value of the property meant that the All Points lien impaired the

$50,000 exemption and was avoidable in full.

All Points contended that the senior $275,000 American Capital lien should be first avoided by default and excluded from the analysis. Under its theory, excluding the senior lien and not adjusting equity to reflect the value of the debtor's one-half interest until after the $232,005 consensual lien is netted out, there would be equity of $282,995 (= $515,000 − 232,005) for all owners, the debtor's half of which would be $141,497.50. Deducting a $50,000 homestead exemption would yield $91,497.50 that could survive § 522(f)(2) lien avoidance.

The court granted the lien avoidance motion in its entirety, without making findings of fact and conclusions of law articulating its reasoning about the statutory formula.

The court's conclusion would follow if it read the statute mechanically by focusing on the phrase "value that the debtor's interest would have in the absence of any liens" in § 522(f)(2) and comparing the sum of the $232,005 consensual lien and the $50,000 exemption with the $257,500 value of the debtor's one-half interest in the property, instead of the $515,000 full value of the property.

The avoidance of the senior American Capital lien has an added mystery. No default was entered. Nor did the court indicate that it would enter judgment by default. As there were no findings, we presume that the court was concluding that there was no nonexempt equity for any judicial lien.

All Points appealed.

**2.** ($515,000 value − $232,005 mortgage) = $282,995 ÷ 2 = $141,497.50. Deduct $50,000 homestead = $91,497.50.

## JURISDICTION

Federal subject-matter jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(K) was founded upon 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether a partially-avoidable senior judicial lien may be avoided when the lienholder does not appear in contest of a lien avoidance motion under § 522(f)(1).

2. Whether § 522(f)(2) requires that liens against the entire fee be subtracted before computing the value of the debtor's interest in co-owned property.

## STANDARD OF REVIEW

█ Application of basic rules of procedure and construction of the Bankruptcy Code present questions of law that we review de novo. *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 550 (9th Cir. BAP 2002).

## DISCUSSION

Before explaining why the debtor has nonexempt equity in his co-owned residence, we focus on why the senior judicial lien could not be avoided in full on a theory of default.

## I

█ Two procedural flaws infect appellant's theory that the senior judicial lien

---

should remain avoided under the 1994 amendments to § 522(f). Lien avoidance is done on a reverse priority basis as a contested matter in which the default requirements of Federal Rule of Civil Procedure 55 apply. Fed.R.Civ.P. 55, *incorporated by* Fed. R. Bankr.P. 7055 & 9014. Those default rules do not permit entry of judgments that are not warranted on the merits.

## A

Otherwise valid judicial liens that are being avoided under § 522(f) as impairing exemptions are deducted in reverse order of priority. This is law of the circuit. *Hanger v. Bank of Am. Nat'l Trust & Sav. Ass'n (In re Hanger)*, 196 F.3d 1292 (9th Cir.1999), *aff'g & adopting*, 217 B.R. 592, 595 (9th Cir. BAP 1997).

█ This reverse priority rule is a corollary to the requirement in the § 522(f)(2)(A) statutory formula that liens be assessed for avoidance on a lien-by-lien basis and has the consequence of giving effect to the priority rules of applicable nonbankruptcy law. 11 U.S.C. § 522(f)(2)(A).[3]

This reverse priority approach is important because it introduces an element of order to the provision of § 522(f)(2)(B) that liens already avoided are excluded from the exemption-impairment calculation with respect to other liens. 11 U.S.C. § 522(f)(2)(B).[4]

---

**3.** The statutory exemption-impairment formula is:

(A) For the purposes of this subsection, *a lien* shall be considered to impair an exemption to the extent that the sum of—(i) *the lien;* (ii) all other liens on the property; and (iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A) (emphasis supplied).

**4.** The provision is:

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

11 U.S.C. § 522(f)(2)(B).

Without an ordering rule that specifies the order in which judicial liens are to be removed under § 522(f), dysfunction could reign. Junior lienors could plot, perhaps in collusion with debtors who may have an incentive to preserve a junior judicial lien in favor of a friend or relation, to leapfrog or squeeze out senior lienors, applicable nonbankruptcy law notwithstanding. By requiring liens to be attacked in reverse order of priority, the priority rules of applicable nonbankruptcy law are honored and opportunities for gamesmanship are reduced.

■ It is literally impossible for both elements of the operating rule for implementing the § 522(f)(2) equation—reverse priority and ignoring liens previously avoided—to apply if one begins with a lien that is supported by some amount of nonexempt equity. Instead, one must approach lien avoidance from the back of the line, or at least some point far enough back in line that there is no nonexempt equity in sight. As an economist would say, judicial liens are avoided in reverse order until the marginal lien, i.e. the junior lien supported in part by equity, is reached.

By avoiding both liens, the bankruptcy court implicitly concluded that there was no equity to support any judicial lien. For the reasons we shall explain later, that was error.

## B

■ All Points' contention that American Capital must be eliminated on a default theory is flawed.

The record does not reflect that default was entered against American Capital, notwithstanding that it did not respond to the motion. Without an entry of default, it is not permissible to proceed to the second step and enter default judgment.

All Points nevertheless would have us assume that a default that does not appear in the record was entered and then equate the phantom default with a default judgment in order to squeeze out American Capital. Although the absence of an entered default ought to end the analysis, we will also (in light of our decision to vacate and remand) explain why the rest of All Points' theory runs afoul of bedrock propositions of default judgment law.

■ First, it is black-letter law that entry of default does not entitle a plaintiff to judgment as a matter of right or as a matter of law. Fed.R.Civ.P. 55(b)(2), *incorporated by* Fed. R. Bankr.P. 7055 & 9014; 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 55.20[2][b] (3d ed.2006) ("not entitled to default judgment as a matter of right"); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Wright, Federal Practice and Procedure § 2685 (3d ed.1998) ("not entitled to a default judgment as of right").

■ Settled precedent establishes that default judgment is a matter of discretion in which the court is entitled to consider, among other things, the merits of the substantive claim, the sufficiency of the complaint, the possibility of a dispute regarding material facts, whether the default was due to excusable neglect, and the "strong policy" favoring decisions on the merits. *E.g.*, *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986) (citing MOORE'S FEDERAL PRACTICE).

■ Default judgments are disfavored because cases should be decided on their merits whenever reasonably possible. *Id.; Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.1985).

■ Our own precedents recognize that default judgments are the result of a two-step process—entry of default and then judgment by default—designed to assure

that the plaintiff is entitled to the relief requested. If the plaintiff is not entitled to the relief requested, the court should not enter default judgment and may even enter judgment in favor of the defaulted defendant. *Cashco Fin. Servs., Inc. v. McGee (In re McGee)*, 359 B.R. 764, 771–72 (9th Cir. BAP 2006); *Wells Fargo Bank v. Beltran (In re Beltran)*, 182 B.R. 820, 823–24 (9th Cir. BAP 1995). That situation exists here: the debtor is not entitled to a default judgment on the merits.

## II

■ Addressing the problem of how to calculate § 522(f) impairment when property is co-owned begins with the language of the statute.

Section 522(f)(1)(A) provides in relevant part: "the debtor may avoid the fixing of a lien on an *interest of the debtor in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is (A) a judicial lien." 11 U.S.C. § 522(f)(1)(A) (emphasis supplied).

Section 522(f)(2) prescribes a formula for calculating whether an exemption is impaired:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the *value that the debtor's interest in the property would have in the absence of any liens.*

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f)(2) (emphasis supplied). That is, an exemption is impaired if subtracting all of the unavoidable liens and the exemption (totaling $282,005) from the value of the debtor's half interest ($257,500) yields zero or less.

The difficulty centers around the operation of the phrase "value that the debtor's interest in the property would have in the absence of any liens" in § 522(f)(2)(A)(iii) when the debtor has only a fractional interest in property. In the instance of single-owner property, there is no problem because the phrase refers to the maximum exemption that is available to the debtor and nothing in excess of that amount.

But in the case of fractionally-owned property, the outcome depends upon whether one subtracts all liens against the entire fee before addressing the value in the absence of any liens. If all consensual liens against the entire fee are netted out first, then the answer is the same as in the single-owner case. If, however, one does not first net out the consensual liens against the entire fee and applies the literal terms of the statutory formula, then the result could be that judicial liens are avoided that do not impair an exemption.

Under facts of this appeal, it is the difference between avoiding judicial liens only to the extent that they leave the $50,000 exemption to the debtor and avoiding an extra $91,497.50 worth of judicial liens.

Thus, the strict or mechanical approach to applying the statutory formula, which has the advantage of conforming to the letter of § 522(f)(2)(A)(iii), would result in avoiding more judicial liens than the minimum necessary to assure the debtor the

maximum available homestead when the debtor owns only half the property.

Such a result appears to be at odds with what Congress intended, which was to overrule judicial decisions that all had the consequence of frustrating a debtor's ability to receive the full exemption authorized by law. H.R.Rep. No. 103–835, 52–54, reprinted in 1994 U.S.C.C.A.N. 3340, 3361–63. In the context of co-owned property, which is not discussed in the House Report, Congress overshot its mark.

The alternative common-sense application realigns the application of the statutory formula to conform with unambiguous Congressional intent. Under this approach, one nets out consensual liens against the entire fee in co-owned property before determining the value of a debtor's fractional interest and excludes those liens from the calculation of "all other liens on the property" under § 522(f)(2)(A)(ii). As applied in this instance, it would lead to a conclusion that there is $91,497.50 in nonexempt equity to which judgment liens could remain attached after assuring the debtor of his $50,000 exemption.

Although the latter approach has intuitive appeal because it achieves a result consistent with the notion that the debtor is entitled to no more than the exemption, it must be conceded that it requires a generous interpretation of § 522(f)(2) because the precise language of the statute does not ineluctably yield that conclusion. Nor does this approach answer the question of how to deal with judicial liens against the entire fee.

Courts are divided between the strict and the common-sense approaches to the § 522(f) question after the 1994 Amendments.

Nationally, the majority position, which includes the First, Third, and Eleventh Circuits, rejects mechanical application of the statutory formula in cases where a debtor co-owns property. All three courts of appeal that have addressed the question have concluded that mechanical application of § 522(f)(2)(A) produces a result at odds with the statutory purpose. *Nelson v. Scala*, 192 F.3d 32, 35 (1st Cir.1999); *Miller v. Sul (In re Miller)*, 299 F.3d 183, 186–87 (3d Cir.2002); *Lehman v. Vision-Span, Inc. (In re Lehman)*, 205 F.3d 1255, 1257 (11th Cir.2000). These courts either net the total outstanding secured debt balance owed by both co-owners against the entire fee before calculating the value of the debtor's fractional interest in the property or achieve a result that assures that the debtor does not enjoy more than the amount of the available exemption.

Our own precedent under the pre–1994 version of § 522(f) applied the same approach by requiring all encumbrances to be deducted before determining the debtor's fractional interest. *Wiget v. Nielsen (In re Nielsen)*, 197 B.R. 665, 670 (9th Cir. BAP 1996), *cited with approval, Miller*, 299 F.3d at 186.

A minority of courts apply the statutory formula literally and mechanically by allowing a debtor to deduct the full amount of liens from the proportional interest in the value of the property. *E.g., Zeigler Eng'g Sales, Inc. v. Cozad (In re Cozad)*, 208 B.R. 495 (10th Cir. BAP 1997); *In re White*, 337 B.R. 686 (Bankr.N.D.Cal.2005).

In concrete terms, the choice between the common-sense and the mechanical applications of the statute in situations where property is co-owned is the difference between protecting only the debtor's $50,000 California exemption from judicial liens or protecting $141,497.50.

We agree with the three courts of appeals to have considered the question that mechanical application of the statutory formula would lead to an absurd result not intended by Congress. *Miller*, 299 F.3d at

187 ("absurd"); *Lehman,* 205 F.3d at 1257 ("absurd"); *Nelson,* 192 F.3d at 35 ("outcome at odds with the purpose of Congress"). The goal is to achieve a balance between debtor and creditor by assuring that a debtor receives the full exemption permitted by law and that creditors secured by judicial liens do not lose their secured positions in value that is not exempt.

Accordingly, we adhere to our view stated in *Nielsen,* a case interpreting the pre–1994 version of § 522(f), that "it is common sense in bankruptcy in a lien avoidance context that joint encumbrances be deducted from the joint value of the property." *Nielsen,* 197 B.R. at 671. Hence, nonavoidable encumbrances on co-owned property must be deducted from the total value of the property before a debtor's fractional interest is determined.

## CONCLUSION

Since there are no findings of fact and conclusions of law regarding the underlying substantive questions, we VACATE the order avoiding the liens of American Capital and All Points and REMAND for further proceedings consistent with this decision.

KLEIN, Bankruptcy Judge, concurring:

I join the majority decision and write separately to note the existence of significant issues that may not be essential to the majority decision but that should not be overlooked. First, whether All Points has appellate standing is uncertain. Second, it would be inappropriate for there to be inconsistent decisions as between All Points and American Capital. Finally, there is a due process notice issue regarding the notice to American Capital that needs to be addressed if, on remand, the bankruptcy court contemplates entry of default.

I

In order to have appellate standing, All Points must be "adversely and pecuniarily affected" by the outcome of the appeal. *Gilliam v. Speier (In re KRSM Props., LLC),* 318 B.R. 712, 716 (9th Cir. BAP 2004).

So long as the American Capital lien is valid for at least $91,497.50, nothing is left for All Points even if we were to agree with its substantive position. In the present procedural posture of the appeal, we must presume that the American Capital lien is valid to the extent of $275,000 and can be avoided only to the extent it impairs the debtor's homestead exemption. This suggests that All Points may not have appellate standing.

To the extent that All Points may presently lack standing, it could obtain standing to contend that the § 522(f)(2) calculation yields $91,497.50 of equity as to which judicial liens cannot be avoided. It could, for example, acquire the American Capital lien. It is also possible that All Points could demonstrate that the American Capital lien had been satisfied or paid down by co-debtors to a point that leaves something for All Points or that the lien can be shown to be invalid under California law.

II

Appellant argues two inconsistent positions. First, it contends there is nonexempt equity. Then, it contends that the senior lien should nevertheless have been avoided even though the sole theory for avoiding that senior lien was the absence of nonexempt equity. This theory works only if the contradiction is accepted.

In multiple defendant situations, the long-settled rule is that default judgments must be consistent with judgments on the merits against other parties. 10 MOORE'S

FEDERAL PRACTICE § 55.25; 10A WRIGHT & MILLER § 2690.

Thus, it is an abuse of discretion to enter default judgments that are inconsistent with decisions as to other defendants. *Neilson v. Chang (In re First T.D. & Inv., Inc.)*, 253 F.3d 520, 532 (9th Cir.2001). Such inconsistencies are regarded as "unseemly and absurd." 10 MOORE'S FEDERAL PRACTICE § 55.25, *quoting Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 554, 21 L.Ed. 60 (1872); *accord* 10A FEDERAL PRACTICE AND PROCEDURE § 2690 (quoting *Frow*).

In the words of the Ninth Circuit's recent invocation of the *Frow* principle in a bankruptcy appeal, it is "incongruous and unfair" for a bankruptcy court to enter a default judgment inconsistent with the merits decision regarding another defendant. *First T.D. & Inv., Inc.*, 253 F.3d at 532–33 ("We therefore hold that the bankruptcy court violated the *Frow* principle and abused its discretion by entering final default judgments, pursuant to Fed. R.Civ.P. 54(b), that directly contradict its earlier ruling in the same action.").

In this appeal, the analysis is straightforward. Both American Capital and All Points were in the posture of defendants to the motion to avoid lien. Each of the judicial liens exceeds the amount of the $91,497.50 equity that is argued to be available to support a judicial lien. As the lienor in senior position, the lien of American Capital could not be avoided to the extent it exceeds $91,497.50 unless it is determined to be no longer valid on the merits. This result would pertain even if American Capital's default is entered.

A default judgment that avoids the American Capital lien merely because of a default, thereby permitting All Points to step into the shoes of American Capital so as to reap the benefit of the $91,497.50, plainly would violate the *Frow* principle, be incongruous and unfair, and amount to a windfall.[1]

## III

There is also a due process notice issue embedded in the facts. This necessitates clarification of one of our precedents in light of the recent Supreme Court decision in *Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006), which emphasizes the need for "reasonable additional steps" when a property right would be extinguished and there is reason to doubt the efficacy of notice.

The lack of response from American Capital to the motion that would extinguish its judgment lien property right may be attributable to confusion resulting from an asymmetry in the interface between the Federal Rules of Bankruptcy Procedure and California law.

We have held that notice of a motion to avoid a judicial lien must be served in the same manner as service of a summons and complaint and when served by mail on a corporation pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3) must be mailed to the attention of an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. *Beneficial Cal., Inc. v. Villar (In re Villar)*, 317 B.R. 88, 92–94 (9th Cir. BAP 2004).

---

1. This is a multiple defendant situation, the lienors being the defendants. The *Frow* principle, however, is powerful enough to encompass lien avoidances that are presented by the alternative procedure of separate motions because the matters are so interrelated that they should be treated as the equivalent of a multiple defendant lienor situation. The point of the *Frow* principle, as enforced by the Ninth Circuit in *Neilson*, is that inconsistent judgments in such matters are not acceptable.

In accordance with *Villar*, the motion to avoid lien was served by mail under Rule 7004(b)(3) directed to "American Capital Resources Inc, Attn Managing Agent, Three University Plaza, Hackensack, NJ 07601." Thus, service appears to have been accomplished on the judgment creditor, American Capital.

The quirk of California law that produces the asymmetry is a provision of the California judgment enforcement statute that notices regarding the judgment are *not* to be sent to the judgment creditor and, instead, must go to the attorney of record who obtained the judgment or that attorney's successor. California Code of Civil Procedure § 684.010 provides in relevant part:

> when a notice, order, or other paper is required to be served under this title [Title 9 Enforcement of Judgments] on the judgment creditor, it *shall be served on the judgment creditor's attorney of record rather than on the judgment creditor* if the judgment creditor has an attorney of record.

Cal.Code Civ. Pro. § 684.010 (emphasis supplied).[2]

Thus, service regarding California judgment enforcement matters must be directed to the counsel who obtained the judgment and not to the judgment creditor. It follows, that a California judgment creditor who receives a notice that must be sent to counsel may reasonably think that the notice can be ignored as either redundant of service on counsel or ineffective.

To be sure, the avoidance of a judgment lien pursuant to the Bankruptcy Code is not a state enforcement of judgment matter, even though it implicates the ultimate enforceability of the judgment. That is, however, a fine distinction that invites confusion and could operate as a trap for the unwary.[3]

In *Jones*, the Supreme Court reiterated that due process requires "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones*, 126 S.Ct. at 1713–14, *quot-*

---

2. This provision is complemented by California Code of Civil Procedure §§ 283, 284, and 285 which eliminate ambiguity about counsel's post-judgment authority:

> An attorney and counselor shall have authority: ... 2. To receive money claimed by his client in an action or proceeding during the pendency thereof, *or after judgment,* unless a revocation of this authority is filed, and upon the payment thereof, and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment.

Cal.Code Civ. Pro. § 283 (emphasis supplied). The attorney in an action or special proceeding may be changed at any time before or *after judgment* or final determination, as follows: 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other.

Cal.Code Civ. Pro. § 284 (emphasis supplied).

> When an attorney is changed, as provided in the last section, written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then he must recognize the former attorney.

Cal.Code Civ. Pro. § 285.

3. *Villar* did not address Cal.Code of Civ. Proc. § 684.010 and did not consider whether service in accordance with it would qualify as service under Fed. R. Bankr.P. 7004(a) by virtue of its incorporation of Fed.R.Civ.P. 4(h), which recognizes (by cross-reference to Rule 4(e)(1)) service "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed.R.Civ.P. 4(e)(1) & (h), *incorporated by* Fed. R. Bankr.P. 7004(a)(1). We need not reach the question because there was no service in this case on American Capital that purported to comply with § 684.010.

*ing Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The notice that is required "will vary with the circumstances and conditions." *Jones,* 126 S.Ct. at 1714, *quoting Walker v. City of Hutchinson,* 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956).

If there is reason to think that notice may not have been effective, then "additional reasonable steps" may be needed "if practicable to do so." *Jones,* 126 S.Ct. at 1718.

In the face of the confusion that results from the seemingly contradictory requirements of *Villar* and of § 684.010, the solution is to require the "additional reasonable step" of giving notice of a motion to avoid a California judgment lien to the attorney of record who is responsible for enforcing the judgment. The reality is that, in view of the attorney of record's continuing obligations under California statute with respect to recorded judgments, notice to the attorney may be more likely to elicit response than service on the judgment creditor.

This reality is confirmed by the fact that the actual contest of the lien avoidance motion came from All Points, which was not served in the manner required by *Villar.* Rather, the debtor's counsel served All Points' attorney of record in the manner of § 684.010.

It is odd that the debtor's bankruptcy counsel, having served the lien avoidance motion on All Points' counsel in the man-

ner of § 684.010, but not on All Points separately in the manner of *Villar*,[4] would not also have served American Capital's counsel in the same manner.[5] Excluding American Capital's counsel from the loop is even odder because debtor's bankruptcy counsel is named as the judgment debtor's counsel of record on the face of American Capital's Abstract of Judgment; he knew the identity of American Capital's counsel and, as demonstrated by the manner in which he served All Points, he believed it was appropriate to serve counsel. Oddities like these cause me to worry about sandbags.

It is apparent that the better practice for bankruptcy judicial lien avoidance motions in any state is to serve both the judgment creditor and the attorney of record. In California, the apparent asymmetry created by § 684.010 warrants requiring that the attorney of record be served as an "additional reasonable step" that is "practicable" within the meaning of *Jones* in order to assure that the essential principle of notice reasonably calculated to come to the attention of the target is honored.

In short, on remand, the bankruptcy court should assure itself that notice consistent with due process in light of *Jones* was provided to American Capital before proceeding.

MONTALI, Bankruptcy Judge, concurring and dissenting:

I concur with the opinion's analysis in Part II regarding the proper way to apply § 522(f)(2),[1] when a debtor seeks to avoid

---

**4.** The service address, taken from the All Points Abstract of Judgment, was: "All Points Capital, c/o Scott Schutzman, Esq., 3700 S Susan Street # 120, Santa Ana, CA 92704."

**5.** The address on American Capital's Abstract of Judgment is: "American Capital Resources, Inc., a subsidiary of Unicapital Corporation, a Delaware corporation, c/o Ivanjack & Lambirth, LLP, 500 S. Grand Ave.,

21st Fl., Los Angeles, CA 90071–0904." And it shows the counsel who prepared document as: "Thomas B. Shuck—SBN 116228, Ivanjack & Lambirth, LLP, 500 S. Grand Ave., 21st Floor, Los Angeles, CA 90071–0904."

**1.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure,

a judicial lien impairing an exemption in partially owned property. This analysis responds to a situation crying out for resolution in our circuit, namely, how to protect a debtor's exemption, and no more, in the all-too-common joint ownership single debtor situation. However, I believe remand should be a mere formality, as I believe the law compels, and we should direct, entry of an order avoiding the two judicial liens except to the extent of $91,497.50 in favor of All Points. I also concur with something unspoken by the majority, but questioned by Judge Klein in his concurrence: the notion that All Points has standing to prosecute this appeal.

Otherwise I dissent from the opinion and feel obliged to respond to Judge Klein's observations in his concurrence about what he calls inconsistent outcomes and his views about California procedural law. The opinion takes judicial activism to a new level—judicial advocacy—by rewarding American Capital, an absentee litigant who has had not one, but several bites of the apple, and hands it an undeserved partial victory. In doing so it misstates controlling precedent on how courts should deal with multiple liens impairing exemption. Further, the concurrence invokes an inapplicable doctrine prohibiting inconsistent outcomes when no one else has. Then it suggests an improper mandatory state-federal service procedure that can only confuse bankruptcy practitioners and bankruptcy judges who are used to well-established and unequivocal federal procedures.

## 1. Standing

All Points held a judicial lien which the record suggests was valid but for the pow-

erful weapon individual debtors have to avoid judicial liens to the extent that they impair exemptions under Section 522(f)(1).

Debtor moved (the "Motion") to avoid All Points' and American Capital's judicial liens because they impaired his claimed exemption in his residence. For reasons known only to American Capital, it did not oppose Debtor's Motion. Maybe the lien had been satisfied by a third party. Maybe American Capital's judgment also created a lien on other property with sufficient value. Maybe American Capital feared the outcome the bankruptcy court reached here and had no economic incentive to fight. Maybe American Capital had little hope for a third position lien on a fractional interest of a debtor in Chapter 7 bankruptcy. It really does not matter. Regardless of American Capital's reasons, its non-opposition to the Motion left All Points "in the money" to the extent of $91,497.50 but for the bankruptcy court's ruling. By that ruling All Points' economic interest was adversely and pecuniarily affected. *See Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 443 (9th Cir. 1983). A "person aggrieved" is one who is "directly and adversely affected pecuniarily by an order of the bankruptcy court." *Id.* at 442. The order "must diminish the appellant's property, increase its burdens, or detrimentally affects its rights." *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir.1999). The order stripped both judicial liens and American Capital did not appeal. All Points had standing to defend the Motion and to prosecute this appeal.[2]

Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (Apr. 20, 2005).

2. The opinion's concerns about dysfunction reigning and debtors colluding with junior lienors is nothing more than speculation. The bankruptcy court has many tools in its toolbox of remedies to deal with such nefari-

## 2. Rewarding The Absent Party

The law of the Ninth Circuit prescribes that when calculating exemption impairment, liens are to be "subtracted in order of reverse priority *and that those which are avoided not be included in the calculation.*"[3] *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997), *aff'd,* 196 F.3d 1292 (9th Cir.1999) (emphasis added). This approach is consistent with section 522(f)(2)(B), which provides that liens that have been avoided are not included in the calculation of other liens. *Id.*; 11 U.S.C. § 522(f)(2)(B).

Ordinarily, when a debtor seeks to avoid more than one judicial lien at the same time under section 522(f), the liens are to be "subtracted in order of reverse priority." *Id.* Thus, if American Capital had opposed Debtor's Motion, the court would have avoided any junior liens *(viz.* the lien of All Points) before determining whether the American Capital lien impaired the Debtor's exemption.

Here American Capital, properly served, did not oppose Debtor's Motion and its lien was effectively avoided by default at the same time the court was considering whether to avoid All Points' lien over its objection.[4] That the order was actually entered later is of no consequence; the court was obligated not to consider the avoided lien under section 522(f)(2)(B). That portion of the order is final as to American Capital, and should not be dis-

turbed on appeal. Thus, under *Hanger,* the avoided American Capital lien should not be included in the section 522(f)(2) calculation vis-a-vis All Points.

As that case points out the purpose of section 522(f) is not to avoid all liens, but simply to protect a debtor's exemption. Simply avoiding the lien of the American Capital and deleting it from the All Points' calculation would protect Debtor's exemption in full. It is inaccurate to characterize All Points as "stepping into the shoes" of American Capital. That is a subrogation concept. Here the statute and *Hanger* instruct that the avoided lien not be counted. We should follow that instruction here. The opinion's result rewards American Capital for its silence at the bankruptcy court and before us by restoring its lien position ahead of All Points. The suggestion that All Points can acquire American Capital's position is hardly a comfort to it.

## 3. The Default

Part I–B of the opinion suggests that the two-step process for entry of default judgments in adversary proceedings under Rule 7055 (incorporating Fed.R.Civ.P. 55) applies to the Motion. I disagree. Rule 9014 provides that "unless the court directs otherwise," Rule 7055 applies in contested matters. In other words, if a bankruptcy court has established local rules for obtaining an order by default in a contested matter, those rules (and not the "black-

ous conduct. No such conduct is present here.

**3.** The opinion cites this same phrase from *Hanger;* regrettably, it does not address the critical words after *"and".*

**4.** This is the same result that would follow had Debtor filed two separate, but similar, motions. Had he done so, with the motion directed at American Capital set earlier, there is little doubt that the court would have de-

faulted American Capital and avoided its lien. See discussion of Local Bankruptcy Rule 9013–1 ("LBR 9013–1") of the Central District of California, *infra.* When the motion directed at All Points came before the court, there would be no justification to consider American Capital's then avoided lien. To reject this same result when Debtor's counsel filed the Motion directed at two respondents elevates form over substance and punishes effective and efficient lawyering.

letter" law two-step default process of Rule 7055) govern.

Here, LBR 9013–1 establishes the procedure for obtaining defaults in contested matters and those procedures do not involve a two-step process. Subsection (g)(1)(F) of LBR 9013–1 specifically provides that an order granting a motion to avoid a lien under section 522(f) may be obtained without a hearing unless one is "specifically requested by filing and serving a written response" complying with subsection (a)(7) within fifteen days of service of the notice.[5] In addition, if the movant wants to set the matter for hearing, LBR 9013–1(a) requires all opposition papers to be filed no later than fourteen days prior to the hearing date and provides that papers "not timely filed and served *may be deemed by the court to be consent to the granting or denial of the motion, as the case may be.*" LBR 9013–1(a)(7) and (11) (emphasis added). "Failure of any counsel to appear [at the hearing], unless excused by the court in advance, may be deemed consent to a ruling upon the motion adverse to that counsel's position." LBR 9013–1(a)(14).

The bankruptcy court, through its local rules, directed a procedure for obtaining default relief on motions to avoid judicial liens pursuant to section 522(f). Consequently, under the language of Rule 9014 itself ("unless the court directs otherwise"), the two-step default procedures of Rule 7055 are inapplicable here. In addition, with one exception in favor of the United States only, I could locate no case involving a contested matter where a pre-

liminary default was entered pursuant to Rule 7055 and followed by a default judgment or order.[6]

I therefore believe the opinion is incorrect in intimating, if not outright holding, that unopposed contested matter motions must be disposed of by Rule 7055's two step process, especially where that process is inconsistent with local rules. Such an approach would create an unnecessary step in what is a tried and true well-designed, efficient and expedient system for disposing of routine contested matter motions. Debtor's Motion was one of those routine motions.

### 4. No Inconsistency In Outcomes

The concurrence cites a very old Supreme Court case, *Frow v. De La Vega,* 15 Wall. 552, 82 U.S. 552, 21 L.Ed. 60 (1872), for the unremarkable proposition that a decree of a court sustaining a charge of joint fraud committed by defendants is inconsistent with another decree disaffirming that charge and declaring it to be unfounded. The Supreme Court said "such a result would be unseemly and absurd, as well as unauthorized by law." 82 U.S. at 554, 21 L.Ed. 60. Moving to a more current time, the concurrence cites an application of the *Frow* doctrine in a bankruptcy setting in *Neilson v. Chang (In re First T.D. & Investment, Inc.),* 253 F.3d 520 (9th Cir.2001). There the Ninth Circuit required that a pure point of law, *viz.* whether a provision of California law providing a safe harbor for an otherwise unperfected security interest, be applied consistently as to certain answering defen-

---

**5.** LBR 9013–1(i) reiterates that a section 522(f) motion is a contested matter and describes what information should be set forth in the motion and supporting papers.

**6.** Fed.R.Civ.P. 55(e)(and thus Rule 7055)prohibits default judgments against the United States unless the claimant establishes a claim

or right to relief by evidence satisfactory to the court. In *Gadoury v. United States (In re Gadoury),* 187 B.R. 816 (D.R.I.1995), the court upheld the two-step process on a debtor's motion against the United States to determine tax liability.

dants and other defendants whose defaults had been entered.

It is important to note that the parties who invoked the *Frow* rule were themselves appellants, complaining about the default judgments against them because they were inconsistent with the court's earlier summary judgment in favor of the defendants who invoked the statutory safe harbor.

Here, American Capital (not before us) is the beneficiary of the *Frow* rule. But as the Bankruptcy Court's analysis and the opinion's interpretation of the applicable substantive law both demonstrate, the relative positions of American Capital and All Points versus the Debtor here involved mixed questions of law and fact, turning on specific valuations and interests and unsettled principles of law dealing with lien avoidance on fractional interests in jointly owned property. More importantly, the bankruptcy court here was completely *consistent* in its disposition, avoiding both judicial liens for the same reason. Thus, not only does the *Frow* doctrine not apply, but the invocation of it in favor of a nonparty to this appeal is unjustified. There is no intimation anywhere that an incorrect decision such as the Bankruptcy Court made in *T & D Investment* was void *ab initio* requiring an appellate court to examine the propriety of the outcome *sua sponte*. It is for American Capital, and no one else,

to raise this issue; otherwise it has been waived and should not be raised now.

## 5. Inapplicable California Rules of Procedure

I also disagree with the concurrence's inference that American Capital could obtain relief from its default based upon an expectation that its California attorney would be served in accordance with inapplicable state law procedures that have nothing to do with avoidance of liens that impair homestead exemptions. We have nothing but speculation as to whether or how American Capital was misled. Where is this expectation in the record?

The concurrence reluctantly acknowledges that Debtor's counsel properly served the Motion on American Capital in accordance with Rule 7004(b)(3) and *Beneficial Cal. Inc. v. Villar (In re Villar)*, 317 B.R. 88 (9th Cir. BAP 2004).[7] It then presumes, without support, both confusion by state court attorneys and American Capital's reasonable ignoring of a federal bankruptcy court motion not served in accordance with state law. Then playing the "due process card" the concurrence infers that there has been a lack of due process to American Capital and argues for a rule that requires compliance with a state rule of procedure notwithstanding *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)[8]. This is not only misguided based upon the inapplicability of

---

7. The record before us reflects that American Capital was properly served with Debtor's Motion, All Points' Response and Objections to Evidence, the Order on Appeal, All Points' Notice of Appeal, and Debtor's Motion for Leave to Appeal.

8. In *Hanna* the Supreme Court upheld the adoption of Federal Rule of Civil Procedure 4(d)(1) to control service of process in diversity cases notwithstanding a state law that required a different method. It noted that to hold that a federal service rule ceases to func-

tion when it alters the mode of enforcing state created rights would be to

"... disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Hanna*, 380 U.S. at 473–74, 85 S.Ct. 1136 (footnote omitted).

While the concurrence does not purport to replace Rule 7004 with California Code of Civil Procedure § 684.010, its reliance on California law certainly is inconsistent with *Hanna* and should be disregarded.

those state court rules, but amounts to a "slippery slope" which can only confuse the issue further about where and when bankruptcy practitioners should follow state law even when they comply with applicable bankruptcy rules.

California Code of Civil Procedure § 684.010 requires service of papers under Title 9, Enforcement of Judgments, on the judgment creditors' attorneys of record. Title 9 covers a multitude of subjects, including enforcement of money judgments, enforcement of non-money judgments, third party claims and related procedures, and satisfaction of judgments. There is nothing in Title 9 (or as far as I know anywhere in California law) permitting a judgment debtor to eliminate all or a portion of a judgment lien to the extent it impairs the judgment debtor's exemption. Yet the concurrence urges that federal lien avoidance practice comply with state law service rules that do not encompass lien avoidance. In fact, enforcement of judgments necessarily occurs after an action has been commenced and has gone to judgment. The idea that counsel of record on a judgment must be served is quite sensible, given the state of any particular lawsuit and post-judgment activity. The procedural rule imposed by the California legislature appears to be more a matter of convenience than of fundamental due process. Thus, while a great number of state court procedures embraced within Title 9 require service of papers on counsel, there is no hint that California law *must* be complied with when a party avails itself of a right found exclusively within the Bankruptcy Code.

As previously noted, avoidance of a lien that impairs an exemption is accomplished by the initiation of a contested matter and

is governed by Rule 9014. See Rule 4003(d).[9] Service of motions initiating contested matters is governed by Rule 9014(b), which requires service in accordance with Rule 7004. Effectively it is the commencement of a new matter, called a contested matter, but functionally no different from the initiation of process. While under certain circumstances service in accordance with state rules of procedure is permitted (*See* Rule 7004(a), incorporating Federal Rule of Civil Procedure 4(h)), nowhere in federal practice (except in the concurrence) is it required.

Apart from the debate of whether inapplicable state rules of procedure are necessary to graft onto well developed federal rules, here the concurrence on its own has decided to render an advisory opinion that somehow under Supreme Court precedent, due process requires compliance with inapplicable state rule of procedure. This is so notwithstanding the fact that no party has raised this matter on appeal, and only American Capital can possibly benefit by this outcome. By no means is this view the holding of this decision.

In conclusion, it is error to remand and relieve American Capital of its inattention and punish All Points for its diligence. Neither party asked us to do that, and doing so is gratuitous. We should avoid the anomaly of an aggrieved creditor versus a successful debtor on an appeal resulting in not the creditor winning and the debtor losing (as I would rule) but rather the debtor losing and American Capital winning by being invited back into the battle to have the benefit of All Points' advocacy, perhaps to assure it the benefit of a lien being brought back from the dead. This result is not in response to a

---

9. Rule 4003(d) provides as follows:
Avoidance by Debtor of Transfers of Exempt Property. A proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014.

Federal Rule of Civil Procedure 60(b) motion but rather this panel's decision that American Capital should be returned to an approximately $91,000 lien position already avoided by an order that is final as to it. This is inconsistent with Ninth Circuit precedent and is inappropriate.[10] In the highly unlikely event American Capital someday could convince the bankruptcy court that it is entitled to some post-judgment relief, that court would need to address just how to fashion an appropriate remedy. That is not our concern now.

We should REVERSE and REMAND in favor of All Points in accordance with the foregoing.

10. As we observed in another, similar bankruptcy appeal, "[f]ederal courts are not run like a casino game in which players may enter and exit on pure whim." *Investors Thrift v. Lam (In re Lam)*, 192 F.3d 1309, 1311 (9th Cir.1999). The Bank has forfeited its right to challenge value of the collateral as determined by the bankruptcy court.

*Enewally v. Washington Mutual Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir. 2004).