**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   CC-14-1274-TaPaKi
                                          )    BAP No.   CC-14-1300-TaPaKi
BOAZ SHAMAM,                              )    (cross-appeals)
                                          )
          Debtor.                         )    Bk. No.   11-19995-VK
_____        )
                                          )    Adv. No.  11-01619-VK
BOAZ SHAMAM,                              )
                                          )
          Appellant/                      )
          Cross-Appellee,                 )
                                          )
v.                                        )    **MEMORANDUM**[*]
                                          )
DONALD MOTZKIN,                           )
                                          )
          Appellee/                       )
          Cross-Appellant,                )
                                          )
ERIT SHAMAM; DAVID KEITH                  )
GOTTLIEB, Chapter 7 Trustee,[**]          )
                                          )
          Appellees.                      )
_____        )

Submitted Without Oral Argument[***]
on March 19, 2015

Filed - April 7, 2015

_____

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

[**]   Neither Erit Shamam nor David Keith Gottlieb have filed briefs or otherwise appeared in these appeals.

[***]   After examination of the briefs and record, and after notice to the parties, in an order entered January 9, 2015, the Panel unanimously determined that oral argument was not needed for this appeal. See Fed. R. Bankr. P. 8019(b); 9th Cir. BAP Rule 8019-1.

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Victoria S. Kaufman, Bankruptcy Judge, Presiding

Appearances: Boaz Shaman, pro se, on brief; Eric P. Israel and Michael G. D'Alba of Danning, Gill, Diamond & Kollitz, LLP on brief for appellee/cross-appellant Donald Motzkin.

Before: TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.

Creditor Donald Motzkin filed an adversary proceeding against chapter 7[1] debtor Boaz Shamam and his non-filing spouse, seeking, as relevant to this appeal, to except from discharge certain debts under § 523(a)(4) and (a)(6). Following a long series of events in the adversary proceeding and two state court proceedings, the bankruptcy court reinstated an entry of default against the Debtor and granted, in part, Motzkin's motion for default judgment. The bankruptcy court subsequently entered an order denying the Debtor's motion to set aside the reinstated default, an order granting in part and denying in part Motzkin's motion for default judgment, and a default judgment fully resolving the adversary proceeding against the Debtor. The Debtor appeals, pro se, from that order and the default judgment.

Motzkin cross-appeals from the bankruptcy court's partial denial of his motion for default judgment.

We AFFIRM the bankruptcy court.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

## FACTS

### Pre-Bankruptcy

The Debtor and Motzkin were the sole shareholders, officers, and directors of D&B Real Estate Corporation, a California corporation (the "Corporation"). The Corporation was the sole general partner of Good Land Partners, L.P., a California limited partnership (the "Partnership"). The Debtor and Motzkin formed the Partnership for the purpose of real estate investment. They were, individually, limited partners in the Partnership.

In 2006, the Debtor and Motzkin applied for and obtained an American Express business credit card for the Corporation (the "Corporate Card"). The account was opened under the names of the Corporation and Motzkin, based on Motzkin's personal financial information. It appears that the Debtor was an authorized user on the account and, thus, that he had his own credit card. American Express mailed the statements directly to the Debtor's personal residence.

The Debtor apparently engaged in the unauthorized use of the Corporate Card. He arranged for a card to be issued to his non-debtor spouse, Erit Shamam ("Mrs. Shamam"), although she was not an officer, director, or employee of the Corporation. He and Mrs. Shamam then made a number of non-business related charges over the course of a three-year period.

Notwithstanding the unauthorized use, the Debtor made regular payments on the Corporate Card for approximately three years before defaulting. American Express then demanded payment from Motzkin for the past due payment. Following negotiations, Motzkin settled the account by paying American Express

3

$32,958.76.  During this time, Motzkin also learned that the Debtor opened a second American Express account in the Corporation's name, which carried a balance of $3,131.08.

In 2006, the Debtor also obtained a Bank of America Visa business credit card, this time, in the name of the Partnership (the "Partnership Card").  As with the Corporate Card, this card was opened using Motzkin's personal financial information and Bank of America mailed the statements directly to the Debtor's personal residence.  According to Motzkin, the Debtor obtained the Partnership Card without Motzkin's knowledge or consent.

The charges incurred on the Partnership Card included a number of non-business related transactions.  Motzkin asserted that he first learned of the Partnership Card in 2009, when Bank of America demanded payment for the past due balance.  Motzkin eventually settled the account by paying Bank of America $23,654.39.[2]

In 2010, Motzkin commenced two actions in California state court.  The first case, against the Debtor and Mrs. Shamam (among others), included causes of action for fraud, breach of fiduciary duty, and breach of contract.  The second case, against the Debtor and the Corporation, sought a judgment removing the Debtor as an officer and director of the Corporation and other declaratory and injunctive relief.

///

---

[2]  Of this amount paid, Bank of America eventually reimbursed Motzkin for $7,169.83; this supports Motzkin's later request to except from discharge $16,484.56 in connection with the Partnership Card.

## Bankruptcy and Adversary Proceeding

The Debtor filed a chapter 7 petition on August 19, 2011. Mrs. Shamam was not a co-debtor.

In November 2011, Motzkin commenced an adversary proceeding against the Debtor and Mrs. Shamam. Motzkin sought to except from discharge the unauthorized credit card charges incurred by the Debtor and Mrs. Shamam, pursuant to § 523(a)(4) for defalcation while acting in a fiduciary capacity and § 523(a)(6) for willful and malicious injury.

In January 2012, Motzkin obtained entry of default against the Debtor.[3] The following month, the Debtor, pro se, moved to set aside the entry of default, which Motzkin opposed. The bankruptcy court denied the Debtor's motion.

Next, Motzin moved for a default judgment. The Debtor yet again moved to set aside the entry of default, which Motzkin opposed.

Following a series of hearings, the bankruptcy court entered an order conditionally granting the Debtor's motion to set aside the default. As provided in a prior order instructing the Debtor to explain why it should not require payment of sanctions as a condition to his requested relief, the bankruptcy court expressly conditioned its vacation of the default on the Debtor's payment of compensatory sanctions to Motzkin in the amount of $2,930.16; the payments were to be made in equal monthly installments of

---

[3] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case. See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

$488.33. The order further provided that the default would not be set aside until the Debtor made two installment payments.

In a subsequent status report, Motzkin reported the entry of a default judgment against the Debtor in the second state court action. The state court judgment awarded damages to Motzkin in the amount of $49,343.32, prejudgment interest of $14,620.78, attorneys fees of $55,935, and costs of $511, for a total judgment of $120,410.10.

Instead of fully complying with the bankruptcy court's conditional order, the Debtor moved to dismiss the adversary proceeding. After the bankruptcy court denied the motion, the Debtor appealed from the denial order to this Panel. See BAP No. CC-13-1187. The Panel dismissed his appeal as untimely.

Although the record is not entirely clear, at some point prior to the bankruptcy court's denial of the motion to dismiss, the Debtor made a second installment payment pursuant to the conditional order. Therefore, following a status conference in November 2012, Motzkin's motion for default judgment was deemed withdrawn without prejudice.

Months passed without activity in the adversary proceeding. Then, in September 2013, Motzkin moved to strike the Debtor's answer to the adversary complaint pursuant to Civil Rule 16(f)(1)(C) and to reinstate the entry of default against the Debtor, based on the Debtor's failure to complete the sanctions installment arrangement. The Debtor did not oppose the motion.

Following a hearing, the bankruptcy court entered an order granting Motzin's motion in October 2013; it deemed the Debtor's

answer to the adversary complaint stricken, and it reinstated the default against the Debtor ("Default Reinstatement Order").

## Motion for Default Judgment

Motzkin filed a second motion seeking a default judgment against the Debtor. Based on the state court judgment, he sought to except from discharge $49,343.32, which constituted $16,484.56 in connection with the Partnership Card and $32,958.76 in connection with the Corporate Card,[4] in addition to the awarded fees and costs. He also requested attorneys fees incurred in the adversary proceeding.[5]

Prior to the default prove-up hearing, the bankruptcy court issued a tentative ruling reflecting its intent to grant, in part, Motzkin's motion. On the § 523(a)(4) claims, it indicated it would except from discharge the Partnership Card debt as the Partnership was the account holder and the Debtor was a partner. But, it also indicated its intent to discharge the Corporate Card debt under § 523(a)(4); as the Corporation was the holder of that account, the requisite fiduciary relationship did not exist under California law.

On the § 523(a)(6) claim, the bankruptcy court indicated its intent to deem the entire state court judgment nondischargeable.

At the default prove-up hearing, the Debtor appeared and was permitted to argue. The bankruptcy court ultimately adopted its

---

[4] The total stated credit card amounts reflect a nominal difference of $100 from the $49,343.32 amount.

[5] Motzin also requested an award of punitive damages. Contrary to the Debtor's assertion on appeal, the bankruptcy court did not award punitive damages.

7

tentative ruling on the § 523(a)(4) issue, but changed its tentative determination on the § 523(a)(6) issue. It determined that the Debtor's payments on the credit cards precluded a finding of the requisite intent necessary for nondischargeability under § 523(a)(6). Given its determination, the bankruptcy court continued the default prove-up hearing for a re-calculation of the prejudgment interest in the state court judgment, limited to the Partnership Card, and the attorneys fees incurred in the adversary proceeding.

## Order Denying the Debtor's Motion to Set Aside the Default Reinstatement Order and Default Judgment

Pursuant to the bankruptcy court's instruction, Motzkin filed a supplemental brief on the re-calculation, asserting $77,948.06 as the amount of nondischargeable debt and $124,812.50 in attorneys fees incurred in the adversary proceeding. In response, the Debtor moved to dismiss, yet again, and to vacate Motzkin's claims. The bankruptcy court promptly denied his motion.

On March 14, 2014, the Debtor moved to set aside the Default Reinstatement Order entered in October of 2013. Attached to his motion was a copy of a default judgment, dated October 28, 2013, entered by the state court in the first state court action and in the Debtor's favor.

At the final hearing on May 14, 2014, the bankruptcy court heard both the Debtor's motion to set aside the Default Reinstatement Order and the continued default prove-up hearing. Following a brief recitation of the history of the proceedings and its reasoning for partially granting Motzkin's motion for

8

default judgment, the bankruptcy court denied the Debtor's motion to set aside the Default Reinstatement Order.

The bankruptcy court then entered two orders: an order denying the Debtor's motion to set aside the Default Reinstatement Order ("Order Denying Motion to Set Aside") and an order granting in part and denying in part Motzkin's motion for default judgment ("Order on Default Judgment"). And it entered a default judgment against the Debtor, which provided that only $77,948.06 of the state court judgment was nondischargeable under § 523(a)(4). The default judgment also awarded attorneys fees in the amount of $124,812.50, plus post-judgment interest.

The Debtor timely appealed from the orders and default judgment. Motzkin cross-appealed from the Order on Default Judgment and the default judgment.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.[6]

## ISSUES

### BAP Appeal No. CC-14-1274

Whether the bankruptcy court abused its discretion when it denied the Debtor's motion to set aside the Default Reinstatement

---

[6] The adversary complaint also alleged two claims under § 523(a)(2) with respect to another loan and a claim against Mrs. Shamam under § 523(a)(3). The § 523(a)(2)(A) claims were dismissed in the default judgment on appeal and the § 523(a)(3) claim was outside the scope of the default judgment.

Nonetheless, both the order on default judgment and the default judgment contain an implicit Civil Rule 54 certification.

9

Order.

BAP Appeal No. CC-14-1300

As to the Corporate Card debt, whether the bankruptcy court abused its discretion when it denied Motzkin's motion for default judgment.

## STANDARDS OF REVIEW

We review for an abuse of discretion the denial of a motion for default judgment, Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986), and the denial of a motion to set aside a default, Jeff D. v. Kempthorne, 365 F.3d 844, 850 (9th Cir. 2004).

A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

**A.  Motzkin's Motion to strike the Debtor's opening brief and dismiss his appeal (BAP Appeal No. CC-14-1274).**

Motzkin moved to strike the Debtor's opening brief and excerpts of record and for dismissal of his appeal (BAP No. CC-14-1274).  He argues that the Debtor included in his excerpts of record various documents not presented to the bankruptcy court, that the record is not continuously paginated, and that the table of contents to the appendix fails to provide page numbers, in contravention of BAP Rule 8018(b)-1(b).

Motzkin further argues that the Debtor's opening brief fails to comply with Rule 8014, as it lacks a table of cases, a table of authorities, basis of appellate jurisdiction, standards of appellate review, statement of the case, summary of the argument, and statement of facts with appropriate record citation. And, he argues that the Debtor failed to provide a certification of interested parties or related cases in accordance with BAP Rule 8015(a)-1(b)-(c). Thus, Motzkin requests that we strike the Debtor's opening brief and dismiss his appeal.

The Debtor opposes; the opposition, however, is not helpful, as he asserts only that he does not owe Motzkin money and attaches the default judgment entered in his favor in the first state court action.

On October 20, 2014, a motions panel issued an order taking Motzkin's motion under advisement for determination by the merits panel. Having considered the motion, opposition, and documents at issue, we grant the motion in part and deny it in part.

To the extent that documents in the Debtor's excerpts of record were not presented to the bankruptcy court, they are deemed stricken from the record on appeal. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001) ("Evidence that was not before the lower court will not generally be considered on appeal.").

We deny Motzkin's request to strike the Debtor's opening brief on appeal and to dismiss his appeal. It is true that the Debtor's brief falls woefully short of compliance with either the Federal Rules of Bankruptcy Procedure or BAP rules and that the Panel is not required to search the record unaided for error.

11

See Dela Rosa v. Scottsdale Mem. Health Sys, Inc., 136 F.3d 1241, 1244 (9th Cir. 1998). That said, we possess a sufficient record for review. Motzkin supplemented the record with four volumes of excerpts in connection with his cross-appeal. And, as stated, we exercise our discretion to take judicial notice of documents filed in the adversary proceeding and underlying bankruptcy case.

**B.   The Debtor's appeal, BAP Appeal No. CC-14-1274.**

The Debtor, in effect, appeals from the Order Denying Motion to Set Aside and the default judgment. On this record, we conclude that the bankruptcy court did not abuse its discretion in denying the Debtor's motion and rejecting his arguments as to the default judgment.

**1.   Civil Rule 55[7] default and judgment by default.**

To obtain a default judgment of nondischargeability of a debt, a two-step process is required: (1) an entry of default (typically by the clerk of court); and (2) a judgment by default. Cashco Fin. Serv., Inc. v. McGee (In re McGee), 359 B.R. 764, 770 (9th Cir. BAP 2006). The bankruptcy court has ample discretion in determining whether to enter a default judgment under Civil Rule 55. All Points Capital Corp. v. Meyer (In re Meyer), 373 B.R. 84, 88 (9th Cir. BAP 2007) ("[D]efault judgment is a matter of discretion in which the court is entitled to consider, among other things, the merits of the substantive claim, the sufficiency of the complaint, the possibility of a dispute regarding material facts, whether the default was due to

---

[7] Civil Rule 55 is incorporated in adversary proceedings by Rule 7055.

12

excusable neglect, and the 'strong policy' favoring decisions on the merits."). But, the bankruptcy court is cautioned against entry of a default judgment if the plaintiff is not entitled to the relief requested; indeed, the bankruptcy court "may even enter judgment in favor of the defaulted defendant." Id. at 89.

**2. The bankruptcy court did not abuse its discretion in denying the Debtor's motion to set aside the Default Reinstatement Order.**

The bankruptcy court may set aside the entry of default upon a showing of good cause. Fed. R. Civ. P. 55(c). To determine whether good cause exists, the bankruptcy court must consider whether: (1) the defendant engaged in culpable conduct that led to the default; (2) the defendant lacked a meritorious defense; or (3) reopening the default judgment would prejudice the plaintiff. United States v. Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010) (internal citation and quotation marks omitted). These factors are "disjunctive, such that a finding that any one of these factors is true is sufficient reason for the [] court to refuse to set aside the default." Id.

Here, the bankruptcy court applied the correct legal standard. It found that the Debtor engaged in culpable conduct when he failed to oppose Motzkin's motion to reinstate the default, failed to complete the sanctions installment arrangement, and emailed Motzkin stating his intent to run up the attorneys fees in the adversary proceeding. The bankruptcy court stated that it considered the Debtor's defense in the first state court action default judgment, but that its decision to enter

13

default judgment was not based on that particular state court litigation. And, it found that reopening the default would prejudice Motzkin, who had taken substantial action based on the default.

The bankruptcy court's findings were not clearly erroneous. The Debtor previously obtained a vacation of the default, contingent on payment of a compensatory sanction. He failed to complete the required sanction payments despite the ability to pay them in monthly installments of $488.33. He provided no sufficient explanation for his noncompliance. The default was reinstated only because the Debtor failed to comply with the bankruptcy court's order.

Moreover, as the bankruptcy court observed, Motzkin sought default judgment in the adversary proceeding based on the state court judgment entered in the **second** state court action. That the state court entered default judgment against Motzkin in the first state court action based on different causes of action had no bearing on the judgment obtained in the second state court action. There was no evidence that Debtor had a meritorious defense.

Finally, the record shows that the Debtor did not oppose Motzkin's motion to reinstate default. Instead, as was his wont, he moved to dismiss the adversary proceeding.

Motzkin, on the other hand, had already obtained partial default judgment at the prove-up hearing in January 2014. The only issue remaining when the Debtor moved to set aside default, for the third time, was the award of attorneys fees incurred in the adversary proceeding.

14

On this record, the bankruptcy court did not abuse its discretion in denying the Debtor's motion to set aside the Default Reinstatement Order.

> **3. The Debtor's remaining arguments as to the default judgment do not apply here or lack merit.**

The Debtor advances a number of arguments with respect to the default judgment. He argues that the bankruptcy court erred by entering the default judgment based on excusable neglect, mistake, and his pro se status. He argues that good cause exists to set aside the default judgment, including defenses to Motzkin's claims. And he argues that the default judgment led to unfair, unjust, and inequitable consequences, and that it is his fundamental right as a debtor and defendant to due process, notice, and the opportunity for justice. These arguments are either inapplicable here or lack merit.

The record reflects that the Debtor never moved to set aside the default judgment.[8] Indeed, there was no opportunity to do so; the bankruptcy court entered the default judgment on May 22, 2014, and the Debtor appealed from the judgment five days later. Thus, we do not review whether good cause existed to set aside the default judgment (as opposed to the entry of default, discussed in section B(2), supra) pursuant to Civil Rule 60(b).

---

[8] The record also reflects that although the bankruptcy court granted in part Motzkin's motion for default judgment at the prove-up hearing, the Debtor did not move for reconsideration of that determination. Instead, once again, he moved to dismiss the adversary proceeding. The bankruptcy court issued an order denying that motion; the adversary proceeding docket incorrectly links that order to another, premature motion to set aside default judgment.

15

The record further reflects that the Debtor was an active participant in the adversary proceeding. He lacked neither notice nor the opportunity to respond with respect to any of the motions or hearings in the adversary proceeding. Instead, the Debtor was an active, albeit noncompliant, litigant at almost every stage of the litigation. Thus, his arguments as to due process fail.

We also reject the Debtor's attempt to use his pro se status as both a shield and a sword. Civil Rule 55 sets forth the procedures for default and default judgment. Pro se litigants are not excused from complying with procedural rules. "Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012). Thus, that the Debtor appeared pro se in the adversary proceeding does not justify his multiple failures, compounded, to defend in the litigation.

The Debtor instead lays blame on Motzkin for incurring additional attorneys fees and on the bankruptcy court for its alleged prejudice against him, as evidenced by its remarks that the Debtor contributed to the length of the case. Neither assertion has merit. A litigant bears the rights and responsibilities of prosecution and defense in a lawsuit; that the Debtor could not or would not obtain counsel did not preclude Motzkin from doing so and defending against the Debtor's numerous motions to dismiss or to set aside bankruptcy court orders.

Moreover, the record shows that the bankruptcy court gave the Debtor ample opportunity to appear and be heard. Its comment

16

that the Debtor contributed to the length of the adversary proceeding was not prejudicial; it was accurate. That the Debtor subjectively believes that the default judgment is unfair, unjust, and inequitable is not a cognizable basis for reversal on appeal.

**C. Motzin's cross-appeal, BAP Appeal No. CC-14-1300.**

On cross-appeal, Motzkin focuses solely on the Corporate Card; he argues that the bankruptcy court abused its discretion in denying default judgment of that debt under either §§ 523(a)(4) or (a)(6). On this record, we disagree.

**1. Procedural posture**

The default judgment provided that only $77,948.06 of the state court judgment was excepted from discharge.[9] In doing so, it appears that the bankruptcy court granted judgment in the Debtor's favor on the § 523(a)(4) and (a)(6) claims relating to the Corporate Card debt.

"Following denial of a motion for entry of a default judgment, a plaintiff would ordinarily be afforded the opportunity to conduct discovery and proceed to trial in an effort to prove its case." Wells Fargo Bank v. Beltran (In re Beltran), 182 B.R. 820, 826 (9th Cir. BAP 1995). This is particularly true where "a plaintiff was unprepared at the default prove up hearing to present any evidence (e.g., because it assumed its allegations would be deemed admitted without the

---

[9] Curiously, neither the judgment nor the order state the basis of nondischargeability. The motion for default judgment, however, was brought only as to the § 523(a)(4) and (a)(6) claims.

17

need for presentation of any evidence at the hearing), or where a plaintiff requested additional time to conduct discovery and/or requested a trial on the merits." Id.

The record here shows that, with respect to the Corporate Card debt, Motzkin did not request additional time to conduct discovery or a trial on the merits of the § 523(a)(4) and (a)(6) claims. Nor does the record show that he was unprepared to present evidence at the prove-up hearing or that additional evidence existed that supported his claims. Motzkin did not raise any such issue in the months following the prove-up hearing, while the bankruptcy court considered attorneys fees issues. Finally, Motzkin does not raise procedural issues on appeal.

We conclude that it was not improper for the bankruptcy court to enter a default judgment that, in effect, discharged the Corporate Card debt without further proceedings.

**2.  The bankruptcy court did not err in denying an exception from discharge of the Corporate Card debt under § 523(a)(4).**

Section § 523(a)(4) excepts from discharge debts for defalcation while acting in a fiduciary capacity. Whether a debtor is a fiduciary for the purposes of § 523(a)(4) is a question of federal law. Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996). The definition is construed narrowly, requiring that the fiduciary relationship arise from an express or a technical trust that was imposed prior to the wrongdoing that caused the debt. Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986) ("The broad, general definition of

18

fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context."); see also Otto v. Niles (In re Niles), 106 F.3d 1456, 1459 (9th Cir. 1997). But, state law informs whether the requisite trust relationship exists. See In re Lewis, 97 F.3d at 1185; Mele v. Mele (In re Mele), 501 B.R. 357, 365 (9th Cir. BAP 2013).

Motzkin argues that the bankruptcy court erred in failing to consider the various partnership relationships that existed; namely, between the Corporation (as general partner of the Partnership) and the Debtor and Motzkin (as limited partners in the Partnership), and between the Debtor and Motzkin in relation to the Partnership. He argues that based on In re Frain, 230 F.3d 1014 (7th Cir. 2000), shareholders of a corporation may owe one another fiduciary duties.

Motzkin is incorrect. California law expressly imposes trustee duties on partners in a partnership and members in a member-managed limited liability company. See Cal. Corp. Code §§ 16404, 17704.09. The same is simply not true of directors, officers, or shareholders to a corporation or to fellow directors, officers, and shareholders.

In fact, under California law, "although officers and directors are imbued with the fiduciary duties of an agent and certain duties of a trustee, they are not trustees with respect to corporate assets." Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1126 (9th Cir. 2003). Thus, even though an officer or director may exercise some control over corporate assets, they are not a fiduciary within the meaning of § 523(a)(4). Id. at 1127; see also Swimmer v. Moeller

19

(In re Moeller), 466 B.R. 525, 529 (Bankr. S.D. Cal. 2012) ("[A] corporate principal is not a trustee of an express or statutory trust and, thus, is not a fiduciary to the corporation and its shareholders for the purposes of the section 523(a)(4) discharge exception.").

Here, the bankruptcy court determined that because the Debtor was an officer and director of the Corporation and the Corporation was the account holder of the Corporate Card, the Debtor was not a fiduciary within the meaning of § 523(a)(4). Under California law, this determination was not erroneous. In his capacity as an officer and director, the Debtor did not hold the Corporation's assets in trust for the Corporation or Motzkin. Thus, he was not a fiduciary as required by § 523(a)(4).

That partnership relationships existed in the periphery of the Corporation does not change the calculus. The Debtor and Motzkin were limited partners in the Partnership. Under California law, limited partners do not owe a fiduciary duty to other partners or the limited partnership.[10] Cal. Corp. Code § 15903.05(a). With the Partnership Card, the Debtor appears to

---

[10] The § 523(a)(4) judgment – including the determination of the requisite fiduciary status within the meaning of that nondischargeability section – is not before us on appeal. Even if it were, however, the Debtor's conduct here is supportive of the necessary fiduciary relationship.

An exception to Cal. Corp. Code § 15903.05 exists implicitly where the limited partner participates in control of the business. See Cal. Corp Code § 15903.03. Causing the Partnership to obtain credit appears to violate the restricted duties of a limited partner; it is also consistent with an implicit determination that the Debtor took on general partnership status by exercising control.

20

have acted outside his role as a limited partner, having exercised control and assumed the corresponding duties of a general partner. But there is no argument or evidence that ties his actions as a corporate officer in connection with the Corporate Card to any imputed general partnership status.

Based on the foregoing, the bankruptcy court appropriately exercised its discretion and denied Motzkin's motion for default judgment as to the Corporate Card debt under § 523(a)(4).

**3. The bankruptcy court did not err in denying an exception from discharge of the Corporate Card debt under § 523(a)(6).**

Section 523(a)(6) excepts from discharge debts arising from a debtor's "willful and malicious" injury to another person or to the property of another. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008). The "willful" and "malicious" are conjunctive requirements, subject to separate analysis. Id.; Carrillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002).

**a. Willfulness under § 523(a)(6).**

Section "523(a)(6) renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." Id. at 1144; see also Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001). The injury must be deliberate or intentional, "not merely a deliberate or intentional **act** that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998) (emphasis in original); see also In re Barboza, 545 F.3d at 706 ("A willful injury is a deliberate or intentional injury, not merely a

21

deliberate or intentional act that leads to injury.") (citation and quotation marks omitted). Thus, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Geiger, 523 U.S. at 64.

Motzkin argues that the bankruptcy court erred when it determined that the Debtor lacked the requisite intent to injure based on the history of payments made on the Corporate Card. Among other things, he contends that the bankruptcy court improperly applied the standard for credit card issuers under § 523(a)(2)(A), rather than the Jercich standard required under § 523(a)(6). As a result, Motzkin argues that it erroneously focused on the Debtor's intent at the time that he incurred the charges, rather than at the time that the Debtor stopped making payments on the account.

Motzkin is correct that the state of mind analysis is determined at the time of injury. He is incorrect, however, that here the relevant injury occurred when the Debtor stopped making payments on the Corporate Card. Section 523(a)(6) relates to intentional torts. See Geiger, 523 U.S. at 61. Here, as the bankruptcy court attempted to point out, the Debtor's unauthorized use of the Corporate Card gave rise to the tort, not his cessation of payments. We reject the notion that failure to pay a credit card is in and of itself an intentional tort. Therefore, the bankruptcy court did not err in determining that its examination of the Debtor's state of mind was at the time that he used the Corporate Card without authorization, not when he defaulted on the payments on the account.

The bankruptcy court determined that the Debtor lacked the

22

requisite intent to injure Motzkin, as evidenced by the Debtor's consistent history of payments on the Corporate Card from 2006 to 2009:

> I don't think that there's proof that when [the Debtor] used the [Corporate Card] that was under [the Corporation], and when he made his payments monthly, that he deliberately or intentionally injured [Motzkin] and that [the Debtor] intended the consequences of his act and that he acted with a subjective motive to inflict injury or with a belief that injury was substantially certain to result from the conduct.

Hr'g Tr. (Jan. 8, 2014) at 86:10-17. It found the undisputed fact that the Debtor made payments on the Corporate Card over a three-year period of time was inconsistent with the notion that the Debtor subjectively intended to injure Motzkin when he incurred the non-business charges or that he subjectively believed that injury was substantially certain to occur. The bankruptcy court's finding was not illogical, implausible, or without support from the record.

Motzkin further argues that the bankruptcy court erred in ruling that he could not use circumstantial evidence to prove the Debtor's intent. Again, we disagree.

Entry of default against a defendant does not automatically entitle a plaintiff to a default judgment; this is so even though the entry of default serves to deem the allegations pled as admitted. Valley Oak Credit Union v. Villegas (In re Villegas), 132 B.R. 742, 746 (9th Cir. BAP 1991). The bankruptcy court may require proof of the facts necessary to a claim or to determine liability. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) (Civil Rule 55 provides the bankruptcy court with "considerable leeway as to what it may require as a

23

prerequisite to the entry of a default judgment."); Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages; [] **establish the truth of any allegation by evidence**; or [] investigate any other matter.") (emphasis added). The bankruptcy court, thus, has "the discretion to require proof of the facts necessary to determine a valid claim for relief against the defaulting parties." Kring v. CitiBank, N.A. (In re Kring), 208 B.R. 73, 75 (Bankr. S.D. Cal. 1997).

Here, at the default prove-up hearing, the bankruptcy court stated to Motzkin: "You haven't demonstrated what the debtor thought. You're using circumstantial evidence." Hr'g Tr. (Jan. 8, 2014) at 85:2-4. But, the bankruptcy court did not rule that Motzkin could not use circumstantial evidence. Its comment instead reflects that, in accordance with Civil Rule 55(b)(2), it required additional proof on the issue of the Debtor's intent, beyond Motzkin's declaration detailing the scope of authorized use of the Corporate Card. The bankruptcy court was well within its discretion to do so. See TeleVideo Sys., Inc., 826 F.2d at 917. There was no error in this regard.

Finally, Motzkin argues that the bankruptcy court erred by permitting the Debtor, as a defaulting party, to dispute his liability at the prove-up hearing. He contends that by permitting the Debtor to argue the issue of intent at the hearing, the bankruptcy court "allowed a record that exceeded what is permitted by law" and that it erroneously "credited" the Debtor's version of events. The record belies Motzkin's contention.

24

At the default prove-up hearing, the bankruptcy court permitted the Debtor to appear and be heard in opposition. But, the Debtor was not sworn in and, thus, did not testify on any issue, let alone on the issue of intent. In any event, there is no evidence that the bankruptcy court "credited" the Debtor's version of events. To the extent it determined that the Debtor lacked the requisite intent for § 523(a)(6), the record is clear that it did so based on the documentary evidence before it, not on the Debtor's statements at the default prove-up hearing.

In sum, the bankruptcy court appropriately exercised its discretion and denied Motzkin's motion for default judgment as to the Corporate Card debt under § 523(a)(6).

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court.